PETITION FOR WRIT OF HABEAS CORPUS: 28 USC §2254 (Rev. 10/99)

United States District Court
Southern District of Texas
FILED

**JUL 1 8 2000**

Michael N. Milby
Clerk of Court

# IN THE UNITED STATES DISTRICT COURT

## FOR THE ___SOUTHERN_____ DISTRICT OF TEXAS

___BROWNSVILLE_____ Division **MISCELLANEOUS**

B-00--29

### PETITION FOR A WRIT OF HABEAS CORPUS BY A
### PERSON IN STATE CUSTODY

B-00-117

| | |
|---|---|
| STEVEN GREGORY SANCHEZ | ESTELLE UNIT |
| PETITIONER | CURRENT PLACE OF CONFINEMENT |
| (Full name of Petitioner) | |
| | TDCJ-ID No. 640839 |
| VS. | PRISONER ID NUMBER |
| GRAY JOHNSON, DIRECTOR | |
| RESPONDENT | CASE NUMBER |
| (Name of TDCJ Director, Warden, Jailor, or authorized person having custody of petitioner) | (Supplied by the Clerk of the District Court) |

## INSTRUCTIONS - READ CAREFULLY

1.  The petition must be legibly handwritten or typewritten, and signed by the petitioner, under penalty of perjury. Any false statement of an important fact may lead to prosecution for perjury. Answer all questions in the proper space on the form.

2.  Additional pages are not allowed except in answer to questions 11 and 20. Do not cite legal authorities. Any additional arguments or facts you want to present must be in a separate memorandum.

3.  When the Clerk of Court receives the $5.00 filing fee, the Clerk will file your petition if it is in proper order.

4.  If you do not have the necessary filing fee, you may ask permission to proceed *in forma pauperis*. To proceed *in forma pauperis*, (1) you must sign the declaration provided with this petition to show that you cannot prepay the fees and costs, and (2) if you are confined in TDCJ-ID, you must send in a certified *In Forma Pauperis* Data Sheet from the institution in which you are confined. If you are in an institution other than TDCJ-ID, you must send in a certificate completed by an authorized officer at your institution certifying the amount of money you have on deposit at that institution. If you have access or have had access to enough funds to pay the filing fee, then you must pay the filing fee.

5.   Only judgments entered by one court may be challenged in a single petition. If you want to challenge judgments entered by different courts, either in the same state or in different states, you must file separate petitions as to each court.

6.   Include all your grounds for relief and all the facts that support each ground for relief in this petition.

7.   When you have finished filling out the petition, mail <u>the original and two copies</u> to the Clerk of the United States District Court for the federal district within which the State court was held which convicted and sentenced you, or to the federal district in which you are in custody.  A "VENUE LIST," which lists U.S. District Courts in Texas, their divisions, and the addresses for the clerk's office for each division, is posted in your unit law library.  You may use this list to decide where to mail your petition.

8.   Petitions that do not meet these instructions may be returned to you.

## PETITION

### What are you challenging?  (Check only one)

| | | |
|---|---|---|
| XX | A judgment of conviction or sentence, probation or deferred-adjudication probation | (Answer Questions 1-4, 5-12 & 20-23) |
| ☐ | A parole revocation proceeding. | (Answer Questions 1-4, 13-14, & 20-23) |
| ☐ | A disciplinary proceeding. | (Answer Questions 1-4, 15-19 & 20-23) |

### All petitioners must answer questions 1-4:

1.   Name and location of the court (district and county) which entered the conviction and sentence that you are presently serving or that is under attack:
     __107TH DISTRICT COURT OF CAMERON COUNTY, TEXAS__

2.   Date of judgment of conviction:  __MARCH 22, 1993__

3.   Length of sentence:  __NINETY-NINE (99) YEARS__

4.   Nature of offense and docket number (if known):  __MURDER No. 92-CR-1384__

### Judgment of Conviction or Sentence, Probation or Deferred-Adjudication Probation:

5.   What was your plea? (Check one)

| | | | | | |
|---|---|---|---|---|---|
| XX | Not Guilty | ☐ | Guilty | ☐ | Nolo contendere |

6.   Kind of trial: (Check one)   XX   Jury   ☐   Judge Only

- 2 -

CONTINUED ON NEXT PAGE

7.  Did you testify at the trial?  ☐ Yes  ☒ No

8.  Did you appeal the judgment of conviction?  ☒ Yes  ☐ No

9.  If you did appeal, in what appellate court did you file your direct appeal?

    **13TH COURT OF APPEALS**         Cause Number (if known) **13-93-350-CR**

    What was the result of your direct appeal (affirmed, modified or reversed): **AFFIRMED**

    What was the date of that decision? **JANUARY 18, 1996**

    If you filed a petition for discretionary review after the decision of the court of appeals, answer the following:

    Result: **REFUSED TO HEAR PETITION**

    Date of result: **9-22-99**        Cause Number (if known): **1385-99**

    If you filed a petition for *writ of certiorari* with the United States Supreme Court, answer the following:

    Result: **N/A**

    Date of result: **N/A**

10. Other than a direct appeal, have you filed any petitions, applications or motions from this judgment in any court, state or federal? This includes any state application for writ of habeas corpus that you may have filed.

    ☒ Yes        ☐ No

11. If your answer to 10 is "Yes," give the following information:

    Name of court: **TEXAS COURT OF CRIMINAL APPEALS**

    Nature of proceeding: **WRIT OF HABEAS CORPUS 11.07**

    Cause number (if known): **92-CR-1384**

    Date (month, day and year) you <u>filed</u> the petition, application or motion as shown by a file-stamped date from the particular court.
    **FEBRUARY 2, 2000**

    Grounds raised:     **SEE ATTACHED MEMORANDUM**

CONTINUED ON NEXT PAGE

Date of final decision:  **MAY 31, 2000**

Name of court that issued the final decision:  **COURT OF CRIMINAL APPEALS**

As to any _second_ petition, application or motion, give the same information:

Name of court: **N/A**

Nature of proceeding:  **N/A**

Date (month, day and year) you _filed_ the petition, application or motion as shown by a file-stamped date from the particular court.
 **N/A**

Grounds raised:  **N/A**

Date of final decision:  **N/A**

Name of court that issued the final decision:  **N/A**

_If you have filed more than two petitions, applications, or motions, please attach an additional sheet of paper and give the same information about each petition, application, or motion._

12.  Do you have any future sentence to serve after you finish serving the sentence you are attacking in this petition?

☐　Yes　　☒　No

(a)  If your answer is "yes," give the name and location of the court that imposed the sentence to be served in the future:

 **N/A**

(b)  Give the date and length of the sentence to be served in the future: **N/A**

(c)  Have you filed, or do you intend to file, any petition attacking the judgment for the sentence you must serve in the future?

☐　Yes　　☒　No

## Parole Revocation:

13.   Date and location of your parole revocation: __N/A__

14.   Have you filed any petitions, applications, or motions in any state or federal court challenging your parole revocation?

   ☐   Yes        ☐   No **N/A**

   If your answer is "yes," complete Question 11 above regarding your parole revocation.

## Disciplinary Proceedings:

15.   For your original conviction, was there a finding that you used or exhibited a deadly weapon?    ☒ Yes    ☐ No

16.   Are you eligible for mandatory supervised release?        ☐ Yes    ☒No

17.   Name and location of prison or TDCJ Unit that found you guilty of the disciplinary violation:

   __N/A__

   Disciplinary case number: __N/A__

18.   Date you were found guilty of the disciplinary violation: __N/A__

   Did you lose previously earned good-time credits?        ☐ Yes    ☐ No **N/A**

   Identify all punishment imposed, including the length of any punishment if applicable, any changes in custody status, and the number of earned good-time credits lost: __N/A__

19.   Did you appeal the finding of guilty through the prison or TDCJ grievance procedure?

   ☐   Yes        ☐   No **N/A**

   If your answer to Question 19 is "yes," answer the following:

   Step 1  Result: __N/A__

   Date of Result: __N/A__

   Step 2  Result: __N/A__

Date of Result: _____N/A_____

## All applicants must answer the remaining questions:

20.   State clearly every ground on which you claim that you are being held unlawfully. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting them.

**CAUTION:**
Exhaustion of State Remedies: You must ordinarily present your arguments to the highest state court as to each ground before you can proceed in federal court.
Subsequent Petitions: If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

Following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement is a separate ground for possible relief. You may raise any grounds, even if not listed below, if you have exhausted your state court remedies. However, you should raise in this petition all available grounds (relating to this conviction) on which you base your belief that you are being held unlawfully.

DO NOT JUST CHECK ONE OR MORE OF THE LISTED GROUNDS. Instead, you must also STATE the SUPPORTING FACTS for ANY ground you rely upon as the basis for your petition.

(a)   Conviction obtained by a plea of guilty which was unlawfully induced, or not made voluntarily, or made without an understanding of the nature of the charge and the consequences of the plea.

(b)   Conviction obtained by the use of a coerced confession.

XX(c)   Conviction obtained by the use of evidence gained from an unconstitutional search and seizure.

XX(d)   Conviction obtained by the use of evidence obtained from an unlawful arrest.

(e)   Conviction obtained by a violation of the privilege against self-incrimination.

(f)   Conviction obtained by the prosecution's failure to tell the defendant about evidence favorable to the defendant.

(g)   Conviction obtained by the action of a grand or petit jury which was unconstitutionally selected and impaneled.

(h)   Conviction obtained by a violation of the protection against double jeopardy.

XX(i)   Denial of effective assistance of counsel.

XX(j)   Denial of the right to appeal.

(k)   Violation of my right to due process in a disciplinary action taken by prison officials.

A.   **GROUND ONE:**   SEE ATTACHED MEMORANDUM

Supporting FACTS (tell your story *briefly* without citing cases or law):

SEE ATTACHED MEMORANDUM

B.   **GROUND TWO:**   SEE ATTACHED MEMORANDUM

Supporting FACTS (tell your story *briefly* without citing cases or law):

SEE ATTACHED MEMORANDUM

C.   **GROUND THREE:**   SEE ATTACHED MEMORANDUM

Supporting FACTS (tell your story *briefly* without citing cases or law):

SEE ATTACHED MEMORANDUM

D.   **GROUND FOUR:** SEE ATTACHED MEMORANDUM

Supporting FACTS (tell your story _briefly_ without citing cases or law):

SEE ATTACHED MEMORANDUM

21.   Have you previously filed a federal habeas petition attacking the same conviction, parole revocation, or disciplinary proceeding that you are attacking in this petition?

☐   Yes          ☒   No

If your answer is "yes," give the date on which _each_ petition was filed, the federal court in which it was filed, and whether the petition was (a) dismissed without prejudice or (b) denied.

N/A

22.   Are any of the grounds listed in paragraph 20 above presented for the first time in this petition?

☐   Yes          ☒   No

If your answer is "yes," state briefly _briefly_ what grounds are presented for the first time and give your reasons for not presenting them to any other court, either state or federal.

N/A

23. Do you have any habeas corpus proceedings or appeals now pending in any court, either state or federal, relating to the judgment or proceeding under attack?

☐    Yes              ☒    No

If "yes," identify each type of proceeding that is pending (i.e., direct appeal, art. 11.07 application, or federal habeas petition), the court in which each proceeding is pending, and the date each proceeding was filed.

_____**N/A**_____

_____

Wherefore, petitioner prays that the Court grant him the relief to which he may be entitled.

**N/A**
_____
Signature of Attorney (if any)

_____

_____

_____

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct and that this Petition for Writ of Habeas Corpus was placed in the prison mailing system on

_July 3, 2000_____ (month, date, year).

Executed on ____7 - 3 - 2000_____ (date).

Steven D. Sanchez
Signature of Petitioner (required)

Petitioner's current address: 264 FM 3478ESTELLE UNIT, HUNTSVILLE, TEXAS 77320-3322

_____

_____

- 9 -

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

§

**STEVEN GREGORY SANCHEZ,**
**Petitioner,**

§

CIVIL ACTION No. _____

**vs.**

§

**GRAY JOHNSON, DIRECTOR,**
**Texas Department of Criminal Justice,**
**Institutional Division,**
**Respondent.**

### MEMORANDUM IN SUPPORT OF GROUNDS FOR RELIEF

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW **Steven Gregory Sanchez, TDCJ-ID No. 640839,**
the Petitioner in Pro-se, hereinafter, in the above-styled
and numbered Cause, and files this his '**Memorandum In Support**
**Of Grounds For Relief,**' and in support thereof, will
respectfully show this Honorable Court the following:

I.

### JURISDICTION

This Court has jurisdiction over the subject and
parties pursuant to U.S.C. Secs. 2241 and 2254.

Respectfully submitted,

/s/ _Steven G. Sanchez_

MR. STEVEN GREGORY SANCHEZ
TDCJ-ID No. 640839
264 FM 3478 Estelle Unit
Huntsville, Texas 77320

## II.

## GROUNDS FOR RELIEF

1. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO READ THE ENHANCEMENT ALLEGATIONS TO THE APPLICANT AND HAVE HIM ENTER HIS PLEA;

2. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY OVERRULING APPLICANT'S OBJECTION TO THE ENHANCEMENT ALLEGATIONS, BECAUSE (pleadings Indefinite And Uncertain) THERE WAS NO NOTICE TO APPLICANT THAT A PRIOR CONVICTION WOULD BE RELIED UPON FOR ENHANCEMENT IN CONNECTION WITH THE PRIMARY OFFENSE FOR WHICH HE WAS ON TRIAL;

3. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN FAILING TO PROVE THAT APPLICANT WAS ONE AND THE SAME PERSON WHO HAD BEEN CONVICTED IN CAUSE 76-8-304, PARAGRAPH FOUR, A PRIOR OFFENSE COMMITTED BY SANTOS ADAMES, A CONVICTION RELIED UPON BY THE STATE FOR ENHANCEMENT OF PUNISHMENT;

4. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN THERE WAS A MATERIAL AND FATAL VARIANCE BETWEEN THE DATE ALLEGED IN THE PRIOR CONVICTION AND THE DATE PROVED;

5. THE TRIAL COMMITTED REVERSIBLE ERROR BY PROCEEDING WITH THE ENHANCEMENT OF PUNISHMENT WHEN THE STATE FAILED TO MEET ITS BURDEN OF PROOF TO ENHANCE PUNISHMENT WHERE THE PROOF DID NOT SHOW THAT THE APPLICANT'S PRIOR CONVICTION IN CAUSE No. 6027, W86-C1-010-CR, WAS FINAL;

6. THE TRIAL COMMITTED REVERSIBLE BY PROCEEDING WITH THE TRIAL WHERE THE STATE FAILED TO ELECT ONE COUNT FROM THE TWO COUNT MURDER INDICTMENT IN CAUSE No. 92-CR-1291-A;

7. THE TRIAL COMMITTED REVERSIBLE ERROR BY OVERRULING APPLICANT'S TIMELY REQUESTED SPECIAL CHARGE AND INSTRUCTION ON "ACCOMPLICE TESTIMONY;

8. THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO INSTRUCT THE JURY ON THE LAW OF PARTIES AND THE PARTY THEORY OF CRIMINAL RESPONSIBILITY;

9. THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED THE PROSECUTION TO IMPROPERLY ADMIT, OVER OBJECTION, EVIDENCE AT THE PUNISHMENT PHASE;

10. THE TRIAL COMMITTED REVERSIBLE ERROR BY OBTAINING A CONVICTION AGAINST THE APPLICANT WHERE THERE WAS NO EVIDENCE TO SUPPORT APPLICANT'S CONVICTION FOR THE ALLEGED MURDER BEYOND A REASONABLE DOUBT, WHERE THE APPLICANT DENIED COMMITTING THE OFFENSE AND ANOTHER INDIVIDUAL BRAGGED OF

**Grounds For Relief Continued:**

COMMITTING SAID OFFENSE;

11.    THE  TRIAL   COURT  ERRED  AND  ABUSED  ITS  DISCRETION  IN
FAILING  TO  GRANT  DILIGENT  APPLICANT'S  TIMELY  MOTION  FOR  NEW
TRIAL;

12.  THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO
GRANT   APPLICANT'S   TIMELY  MOTION  FOR  MISTRIAL  BECAUSE   OF
PREJUDICIAL   CONDUCT   OF   THE    PROSECUTING   ATTORNEY   IN
PERSISTENTLY  DISREGARDING  THE  TRIAL  COURT'S  RULING;  and

13.    APPLICANT  DID  NOT  RECEIVE  REASONABLE  EFFECTIVE
ASSISTANCE  OF   COUNSEL   DURING  THE  COURSE  OF  HIS  CRIMINAL
TRIAL.

III.

## STATEMENT OF THE CASE

Applicant was indicted in Cause No. 92-CR-806-A for the offense of Capital Murder on June 24, 1992, which was dismissed on State's motion and Applicant was re-indicted on October 14, 1992 for the offense of Murder (Habitual) in Cause No. 92-CR-1384 (Transcript-I P.j 8-9) The indictment alleged that Applicant committed the offense of Murder of Pedro Zapata, Jr., by shooting him with a firearm on March 11, 1992 (Transcript-I P. 100-101).

Applicant's trial on guilt/innocence commenced on March 15, 1993 (Transcript-I P. 5). The jury returned a guilty verdict on March 22, 1993 (Transcript-I P. 5). Punishment phase of the trial commenced on March 22, 1993 and ended on March 23, 1993, which Applicant receiving a ninety-nine (99) years Sentence (Transcript-I P. 6).

On June 25, 1993, Mr. Jerrold R. Davidson, was appointed to represent the Applicant on appeal and gave notice of appeal on that date (Transcript-I P. 7).

On November 22, 1993, Applicant filed an out-of-time appeal based upon newly discovered evidence which was granted on January 28, 1994. On May 11, 1994, the trial court's findings of fact and conclusions of law on the motion were sent to the thirteenth Court of Appeals. On June 23, 1994 the Court of Appeals returned the new trial motion to the trial court to determine the credibility of the witnesses (S.F. Vol. IV, P. 5) which a hearing was held on September 9, 1994.

4

The trial court overruled Applicant's out-of-time motion for new trial on November 3, 1994.

On January 18, 1996 in an unpublished opinion the Thirteenth Court of Appeals affirmed the judgment of conviction in Appeal No. 13-93-350-CR. No Motion for Rehearing or Petitioner for Discretionary Review was filed.

On March 31, 1999 the Texas Court of Criminal Appeals granted Applicant's Writ of Habeas Corpus for an out-of-time appeal in an unpublished opinion in No. 73,355.

On January 9, 1999 Applicant filed an Application for Writ of Habeas Corpus for an out-of-time appeal to file a Petition for Discretionary Review. On March 1, 1999 the application for an out-of-time appeal was presented to the Texas Court of Criminal Appeals in Writ No. 40,725-01. On April 20, 1999 the Court of Criminal Appeals granted Applicant's Motion for an Extension of Time which to file for Discretionary Review.

On August 20, 1999 Applicant's Petition for Discretionary Review was presented to the Court of Criminal Appeals. On September 22, 1999 the Court of Criminal Appeals refused Applicant's Petition for Discretionary Review in Case No. 1385-99.

On February 2, 2000 Applicant filed his second application (But his first application attacking the validity of his conviction) for Writ of Habeas Corpus with the trial court. On May 31, 2000 the Court of Criminal Appeals denied the Applicant's Writ of Habeas Corpus without written order.

This instant 2254 Habeas Petition follows.

5

IV.

## STATEMENT OF THE FACTS

The Applicant was charged with the Murder of Pedro Zapata, Jr., on October 14, 1992. (Transcript-I 8-9). The indictment alleged that Applicant committed the offense of murder on or about March 11, 1992.

The evidence adduced at the Applicant's trial indicated that a young couple found the body of Pedro Zapata, Jr., behind the municipal auditorium in Harlingen, Cameron County, Texas and reported it to the Harlingen Police Department. Preliminary investigation failed to identify the perpetrator of the homicide.

The First witness to testify for the State was Detective Ofelio Munoz. (S.F. Vol. II. P. 31-32) Detective Munoz was with the Harlingen Police Department. He testified and told the jury that he received information that the nother of Antonio Verrett had told a probation officer that her son knew about the death of Pedro Zapata, Jr. Upon questioning Antonio Verrett, Detective Munoz was told that Applicant had shot and killed Pedro Zapata, Jr., and that he, Verrett, was present and driver of the vehicle involved in the shooting. (S.F. Vol. VI. P. 157-159).

Detective Munoz was the chief investigative officer in the case, he testified that he obtained a picture of the Applicant from his parole officer (S.F. Vol. VI. 160-7-25) and (S.F. Vol. VI. 160-1-12).

Based upon this information, Applicant was arrested on April 16, 1992 and placed in jail without bail.

On April 20, 1992, Detective Munoz obtained a search warrant and executed it on the same date searching the vehicle and home of Diana de la Cruz (Transcript-I P. 138), the girlfriend of Applicant.

The next witness for the State, Christina Ontiveros, testified and told the jury that Applicant was there with her an hour before they arrested him. (S.F. Vol. VII. P. 421-17-25) She told the jury that Applicant told her he was going to see his parole officer.

The next State's witness, Officer Rico Garcia, who testified and told the jury that the Applicant had been in Huntsville prison. (S.F. Vol. VII. P. 11-25).

The State's case rested entirely upon the testimony of Adrian "Tony" Verrett. Verrett testified and told the jury that he met Applicant through his sister, Carla Wright, a topless dancer, in February, 1992 (S.F. Vol. VIII. P. 492-23). He told the jury that he and Applicant became friends and began partying together and using drugs (S.F.. Vol. VIII. P. 495-14-25). He further testified that on March 11, 1992, Applicant came by his trailer house between 11:00 A.M. and 12:00 noon (S.F. Vol. VIII. P. 504-4) and they began drinking beer (S.F. Vol. VIII. P. 505-17). After consuming the 6-pack of beer at the trailer house they went to purchase more beer at a local convenience store. Verrett told the jury that he was driving the vehicle owned by Applicant's

7

girlfriend, Diana De La Cruz. Applicant directed Verrett to drive to a Coastal Mart store where he made a telephone call (S.F. Vol. VIII. P. 506-9-10). After making the phone call, Applicant directed Verrett to drive to an Exxon Station on Tyler Street in Harlingen, Texas, where Pedro Zapata, Jr., the deceased, was picked up (S.F. Vol. VIII. P. 9-25). After picking up the deceased, they drove around for a while and then decided to purchase cocaine (S.F. Vol. VIII. 509-5-25). The three of them continued to drive around drinking beer and using the cocaine. When the deceased said he needed to relieve himself, Verrett drove to the site of the killing. After arriving at the deserted area, the deceased got out of the car to relieve himself. Verrett told the jury that Applicant followed the deceased and as the deceased was urinating, Applicant shot him several times.

Verrett told the jury that after shooting the deceased, Applicant removed a small black book from his pocket (S.F. Vol. VIII. P. 516-14-25). After the shooting, Verrett then at the Applicant's direction, drove to Waslaco, Texas where Applicant made a telephone call. (S.F. Vol. VIII. P.524-4-25). After making the telephone call, Applicant directed Verrett to drive to Santos Adame residence outside Mission, Texas (S.F. Vol. VIII. P. 527-1-18).

After Applicant was convicted and sentenced on October 17, 1993, Verrett was placed in a jail cell with Arnoldo Garcia. Garcia had been the court-appointed investigator for Applicant. In the cell with Verrett and Garcia was a friend

CAbPDF - www.fisdco.com

of Verrett's, Jose Gaona. Verrett began telling Gaona about the killing of Pedro Zapata, Jr., and bragged to Gaona and Garcia how he had actually killed Zapata, Jr., over a drug deal and then framed Applicant. An Affidavit was taken from Garcia and counsel for the Applicant filed an out-of-time Motion For New Trial with the trial court.

On November 3, 1994, the trial court conducted a second hearing in which Verrett denied making any statement that he had killed Pedro Zapata, Jr. A third witness, Jose Gaona, denied he had told Applicant's attorney that Verrett had made such statements. The court then denied Applicant's motion for new trial. (S.F. V-2-32).

In light of the conduct of the prosecutor and State's witnesses and the contradictory statements made by the State's chief witness, Verrett, Applicant was denied Due Process of the law and deprived of a fair and impartial trial which formed the basis of this instant application for writ of habeas corpus.

V.

## ARGUMENT AND AUTHORITIES

### GROUND OF ERROR No. 1:

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO READ THE ENHANCEMENT ALLEGATIONS TO THE APPLICANT AND HAVE HIM ENTER HIS PLEA:**

In all Felony cases, after indictment, and all misdemeanor cases punishable by imprisonment, there shall be an arraignment.

The plea of the defendant joins issue with the State's pleadings as set forth in the indictment, complaint or information, and the accused must be given an opportunity to declare that he is guilty, or not guilty, or makes no contest, as therein charged.

**Tex. R. Pro. 80(d):** "The court of appeals shall presume ... that the defendant was arraigned; that he pleaded to the indictment...unless such matters are made an issue in the court below, or otherwise affirmatively appears to the contrary from the record."

### 1. CRIMINAL LAW KEY 633(2)

**Without reading of indictment** and **entering of plea, no issue is joined.** Vernor's Ann. Tex. C.C.P., Art. 36.01.

### 2. CRIMINAL LAW KEY 986.6(1)

**Reading of indictment is mandatory at penalty stage of bifurcated trial.** Vernon's Ann. Tex. C.C.P., Art. 36.01.

In the instant case, the jury found Applicant guilty of murder and found the enhancement paragraphs three and four to be true. The jury assessed Applicant's punishment at ninety-nine (99) years imprisonment in accordance with V.T.C.A. Penal Code, Sec. 12.42(d).

CAMPDF - www.texiss.com

At the punishment phase in this instant case, the State introduced evidence to prove the enhancement allegations in the indictment in Cause No. 92-CR-1384-A. The trial court instructed the jury on the law and the jury found paragraphs three and four to be true.

Applicant contends that the jury charge did not contain a statement that the Applicant had pleaded to the enhancement allegations of the indictment. Further, the judgment, signed by the trial judge, omitted the recitation that the enhancement allegations were read to the jury and that the Applicant entered his plea. See Applicant's Exhibit "A" (A copy of the judgment and sentence) Attached hereto.

Applicant contends that the defense made the proper objections during the punishment stage of the trial. (S.F. Vol. XII1. P. 15-11-25). The hearing on punishment is replete with objections concerning the enhancement allegations. The trial court overruled the defense objections to the enhancement allegations of the Applicant's indictment.

On March 16, 1993, the indictment was read to the jury and the Applicant entered his plea of not guilty thereto whereupon the State introduced evidence through March 19, 1993 and rested its case. Applicant moved for a directed verdict, which was denied by the trial court. Then Applicant's motion for mistrial was denied.

On March 22, 1993, the defense introduced evidence and the State offered rebuttal evidence. The trial court then

charged the jury as to the law applicable to the cause and argument of the prosecutor and the defense was heard and concluded.   The Jury retired   and returned with a guilty verdict of murder. On March 23, 1993, the Applicant elected in writing to have his punishment assessed by the same jury. The Court charged the jury with additional instructions as to the law applicable to punishment of the cause and the jury after hearing the arguments presented returned with a verdict of ninety-nine (99) years confinement. The jury also answer, "Yes," to the special issue as to the use of a deadly weapon.

Applicant contends further that his trial counsel filed a Motion For New Trial on April 12, 1993, wherein, on page two, second paragraph, counsel alleged that, "The Court erred in the charge on punishment in that prior to the hearing on punishment, the portions of the indictment concerning punishment were not read and the Defendant did not plead to the   same   and proceed with the punishment hearing without Defendant's plea of not true was a violation of the Defendant's Constitutional rights to be tried by a fair and impartial jury and the effective assistance of counsel." See Applicant's Exhibit "B" (Motion For New Trial) Attached hereto.

The statutes relevant to the disposition of this issue are **Arts. 36.01 and 44.24, V.A.C.C.P.**

**Article 36.01** states:

A   jury being impaneled in any criminal action, the

cause shall proceed in the following order:

1.   The indictment or information shall be read to the jury by the attorney prosecuting. When prior convictions are alleged for purposes of enhancement only and not jurisdictional, that portion of the indictment or information reciting such convictions shall not be read until the hearing on punishment is held as provided in **Article 37.07 V.A.C.C.P.**

2.   The special pleas, if any, shall be read by the defendant's counsel, and if the plea of not guilty is also relied upon, it shall also be stated. See, **Warren v. State, 693 S.W. 2d 414 (Tex. Cr. App. 1985).**

The reading of the indictment has long been held to be mandatory. **Essary v. State,** 53 Tex. Cr. R. 596, 111 S.W. 927 **(Tex. Cr. App. 1908).** The rationale for the rule is to inform the accused of the charges against him and to inform the jury of the precise terms of the particular charge against the accused. **Essary, supra.** Without the reading of the indictment and the entering of a plea, no issue is joined upon which to try. **Peltier v. State,** 626 S.W. 2d 30 (Tex. Cr. App. 1981).

In the instant case, Applicant contends that his sentence must be set aside and the case remanded for a new punishment hearing because, before the punishment hearing began, the State did not read the enhancement paragraphs, and he did not plead to the enhancements. See, **Hazelwood v. State, 838 S.W. 2d 647 (Tex. App. Corpus Christi - 1992),** the

Court held that the, "Reading of enhancement allegations and taking of plea is mandatory." **Art. 36.01 V.A.C.C.P.**

Therefore, by the trial court's failure to read the enhancement allegations to the Applicant and have him enter his plea was reversible error which was preserved by the Applicant's objections, motions for new trial, and motion for mistrial. See **Richardson v. State,** 763 S.W. 2d 594 (Tex. Cr. App. 1988).

## GROUND OF ERROR No. 2:

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY OVERRULING APPLICANT'S OBJECTION TO THE ENHANCEMENT ALLEGATIONS, BECAUSE (Pleadings Indefinite And Uncertain) THERE WAS NO NOTICE TO APPLICANT THAT A PRIOR CONVICTION WOULD BE RELIED UPON FOR ENHANCEMENT IN CONNECTION WITH THE PRIMARY OFFENSE FOR WHICH HE WAS ON TRIAL:**

1.   In cases involving prior convictions, for purpose of enhancing the punishment, definiteness and certainty are required by the State's pleadings.

2.   The State's proof must sustain the description in the indictment of the prior convictions relied upon to enhance punishment. A variance in a material allegation is fatal.

3.   It is imperative for the State to prove that the defendant on trial is one and same person who was so previously convicted.

4.   A prior "void" conviction will not support enhancement of punishment.

The indictment in this instant case read as follows:

"IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS

THE GRAND JURORS, for the County of Cameron, State aforesaid, duly organized as such at the JULY Term, A.D. 1992, of the 107TH JUDICIAL DISTRICT in and for said County, upon their oaths in said Court, present that STEVEN GREGORY SANCHEZ A/K/A "STEVE EL LOCO", SANTOS ADAMS AND MIGUEL HERNENDEZ GARCIA hereinafter called Defendants, on or about the 11TH day of MARCH A.D. One Thousand Nine Hundred and NINETY-TWO and anterior to the presentment of this indictment, in County of Cameron and State of Texas, did then and there unlawfully, intentionally and knowingly cause the death of PEDRO ZAPATA, JR.; by shooting PEDRO ZAPATA, JR. with a firearm,

AND THE GRAND JURORS aforesaid, upon their oaths in said court, present that Defendants, on or about the 11th day of March, 1992 and anterior to the presentment of this indictment, in the County of Cameron and State of Texas, did then and there unlawfully, with the intent to cause serious bodily injury to PEDRO ZAPATA, JR.. commit an act clearly dangerous to human life that caused the death of PEDRO ZAPATA, JR.. said act being: shooting PEDRO ZAPATA, JR. with a firearm,

AND THE GRAND JURORS DO FURTHER present that before the commission of the offense now charged above. to wit, on the 20th day of August, 1984, in Cause Number 357286 in the 185TH District Court of Harris County, State of Texas, STEVEN GREGORY SANCHEZ A/k/A "STEVE EL LOCO", under the name of STEVEN GREGORY SANCHEZ, was duly and legally convicted of the

felony offense of RAPE,

And that before the commission of the offense now charged above and after the previously mentioned conviction in Cause Number 357286 was final, STEVEN GREGORY SANCHEZ A/k/A "STEVE EL LOCO", committed the felony offense of BURGLARY OF A BUILDING, and was convicted of such offense the name STEVE SANCHEZ, on the 10TH day of APRIL, 1989, in Cause Number 6025,w86-01-010-CR, in the 218TH District court of Wilson County, State of Texas,

And that before the commission of the offense now charged above and after the previously mentioned conviction in Cause Number 357286 was finial, STEVEN GREGORY SANCHEZ A/K/A "STEVE EL LOCO", committed the felony offense of POSSESSION OF A WEAPON IN A PENAL INSTITUTION, and was convicted of such offense under the name of STEVE SANCHEZ, on the 4th day of November, 1991, in Cause Number 13,036-CR, in the 349TH District Court of Houston County, State of Texas,

AND THE GRAND JURORS DO FURTHER present that before the commission of the offense now charged above, to wit, on the 16th day of AUGUST, 1976, in Cause Number 76-B-304 in the United States District Court for the Southern District of Texas, SANTOS ADAMES, under the name SANTOS ADAMES, was duly and legally convicted of the felony offense of POSSESSION WITH INTENT TO DISTRIBUTE HEROIN.

against the peace and dignity of the State.

See Applicant's Exhibit "C" (A Copy of the Indictment) Attached hereto.

———————— ——— ————————————————————
Foreman of the Grand Jury

In the instant case, it should be noted that the instant indictment contains six (6) paragraphs. The first two paragraphs (counts) relate to the primary offense of murder of PEDRO ZAPATA, JR. The other four paragraphs of the indictment relates to the enhancement paragraphs.

In this instant case, in the indictment, the Jury found paragraphs three and four to be true and assessed Applicant's punishment at ninety-nine (99) years imprisonment. See, Applicant's Exhibit "A" (A copy of the judgment and sentence) Attached Hereto.

As discussed above, the Jury found paragraphs three and four to be true. However, the State dismissed enhancement paragraph three of the Applicant's indictment. (S.F. Vol. XIII. P. 82).

During the punishment phase of the Applicant's trial the following transpired:

MR. DAVIDSON (Defense counsel):  I do find that I feel like I need to make an objection as to the Court's Charge in that it does not conform to the allegations set out in the indictment as to the offense of possession of a weapon by an inmate in an institution, and therefore, I don't think the verdict form, number one, should apply in this case.

MS. LOPEZ (State's Counsel):  Your Honor, all the State alleged in the charge was the rape and the burglary of a building and we did not proceed on the penal -- the weapon in the penal institution. We only have to have two for enhancement. We only went on the two.

THE COURT:  So you are dismissing the third?

MS. LOPEZ:  Yes, because we only needed two.

THE COURT:  So the State, for the record, is dismissing the third offense?

MS. LOPEZ:  Yes.

THE COURT:  All right. I will turn the arguments over to the State's counsel. (S.F. Vol. XIII. P. 82).

During the punishment phase, as the record reflects,

the State dismissed its third enhancement paragraph (possession of a weapon in an penal institution) and stated that it only needed two for enhancement.

Further, enhancement paragraph four of the instant indictment is for (Possession With Intent to Distribute Heroin) an offense committed by SANTOS ADAMES, another individual. See, Applicant Exhibit "C" (A copy of the Applicant's indictment) Attached Hereto.

Applicant contends that he is entitled to a new punishment hearing where his sentence was enhanced by several void prior convictions. See, **Ex parte Dietzman,** 851 S.W. 2d 304 (Tex. Crim. App. 1993).

Applicant contends that the error in this instant case had the effect of raising the minimum punishment from 5 to 25 years confinement. The error was not harmless because Applicant received maximum sentence of 99 years imprisonment. Also, the prosecutor mentioned the void prior convictions in argument, the jury was given the pen-pack from the void convictions, and the jury made an express finding as to the prior convictions. See, **Fulbright v. State,** 818 S.W. 2d 808 (Tex. Crim. App. 1991).

Therefore, Applicant contends that his sentence is void, and this defect may be raised at any time. However, Applicant made the proper objections during the punishment stage and filed the appropriate motion to quash the indictment. See, Applicant's Motion to Set Aside The indictment. (Transcript-I Page 18).

In the instant case, as it now stands, the State dismissed its third enhancement paragraphp. This left enhancement paragraphs 1, 2, and 4. As discussed aforementioned, paragraph 4, was committed by **Santos Adames**, not the Applicant, **Steven Gregory Sanchez.** Therefore, the jury's verdict of true to enhancement paragraphs three and four are void, because paragraph three (3) was dismissed and paragraph four (4) was a conviction committed by, Santos Adames, another individual. As to enhancement paragraphs 1 and 2 in the instant indictment, the jury did not find them to be true.

Applicant contends that because the State failed to prove that Applicant was one and same person convicted and sentenced in either (Paragraph 3 or 4) of the two prior convictions herein, the State did not produced evidence to support the jury verdict. The convictions referred to in the enhancement allegations are void, and which will not support enhancement of punishment. See, **Turk v. State,** 867 S.W. 2d 883 (Tex. App. - Houston [1st Dist.] 1993, pet. ref'd) and **Rosales v. State,** 867 S.W. 2d 70 (Tex. App. - El Paso 1993).·

Applicant further contends that the State is barred by double jeopardy from seeking to prove again that the Applicant was an habitual offender under the same primary offense. See, **Gonzales v. State,** 707 S.W. 2d 570 (Tex. Crim. App. 1986). See also, U.S. Const. Amends. 1st, 5th, 6th 8 14th and Art. 1, Secs. 10 8 19 of the Texas Constitution.

## GROUND OF ERROR No. 3:

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN FAILING TO PROVE THAT APPLICANT WAS ONE AND THE SAME PERSON WHO HAD BEEN CONVICTED IN CAUSE 76-B-304, PARAGRAPH FOUR, A PRIOR OFFENSE COMMITTED BY SANTOS ADAMES, A CONVICTION RELIED UPON BY THE STATE FOR ENHANCEMENT OF PUNISHMENT:**

As alleged in Applicant's Ground of Error Number Two, the jury found enhancement paragraphs three and four to be true and assessed his punishment at ninety-nine (99) years imprisonment. The record reflects that the State dismissed enhancement paragraph three from the instant indictment against the Applicant.

The instant indictment in Cause No. 92-CR-1384-A, in pertinent part, concerning enhancement paragraph four (4), reads:

"AND THE GRAND JURORS DO FURTHER present that before the commission of the offense now charged above, to wit, on the 16TH day of AUGUST, 1976, in Cause Number 76-B-304 in the United States District Court for the Southern District of Texas, SANTOS ADAMES, under the name SANTOS ADAMES, was duly and legally convicted of the felony offense of POSSESSION WITH INTENT TO DISTRIBUTE HEROIN." See, Applicant's Exhibit "C" (A copy of the Applicant's indictment) Attached Hereto.

As shown above, enhancement paragraph four of the instant indictment, alleged an offense committed by SANTOS ADAMES, another individual. Therefore, the State failed to prove the identity of the Applicant (defendant) as the person convicted in enhancement paragraph four (4) of the indictment. See, **Rosales v. State,** 867 S.W. 2d 70 (Tex. App. - El Paso 1993).

In **Rosales v. State, supra,** the Court held that, "Where the State failed to prove that the defendant was the same person convicted in the records it offered into evidence, admission of the evidence of the prior conviction was reversible error on punishment." See, **Griffin v. State,** 866 S.W. 2d 754 (Tex. App. - Tyler 1993).

Applicant contends that it was incumbent upon the State to establish the identity of Applicant as the person who had been previously convicted. See, **Cleveland v. State,** 493 S.W. 2d 145 (Tex. Crim. App. 1973).

Applicant contends that the failure of the State to sustain its burden in proving that Applicant was one and same person who had been convicted in Cause No. 76-B-304 in the United States District Court for the Southrern District of Texas alleged in the indictment for purposes of enhancement was reversible error. See, **Sebren v. State,** 633 S.W. 2d 328 (Tex. App. - Houston [14th Dist.] 1982).

Applicant contends that the judgment and sentence entered in this instant case is, therefore, void as having been entered in the absence of a valid indictment secured. contrary to the First, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, and Article 1, Sections 10 and 19 of the Texas Constitution.

Applicant's conviction must be reversed and remanded for an entry of an acquittal for violations of the Due Process Clause of the Sixth and Fourteenth Amendments to the Constitution of the United States.

## GROUND OF ERROR No. 4:

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN THERE WAS A MATERIAL AND FATAL VARIANCE BETWEEN THE DATE ALLEGED IN THE PRIOR CONVICTION AND THE DATE PROVED:**

In the instant case, the enhancement paragraphs 1, 2 and 3, in pertinent part, reads:

"AND THE GRAND JURORS DO FURTHER present that before the commission of the offense now charged above, to wit, on the 20th day of **August, 1984**, in Cause Number 357286 in the 185TH **District Court of Harris County**, State of Texas, STEVEN GREGORY SANCHEZ A/K/A "STEVE EL LOCO"' under the name STEVEN GREGORY SANCHEZ, was duly and legally convicted of the offense of **RAPE**,

And that before the commission of the offense now charged above and after the previously mentioned conviction in Cause Number 357286 was final, STEVEN GREGORY SANCHEZ A/K/A STEVE EL LOCO", committed the felony offense of **BURGLARY OF A BUILDING**, and was convicted of such offense under the name of **STEVE SANCHEZ**, on the 10TH day of **APRIL, 1989**, in Cause Number 6025, **W86-01-010-CR**, in the 218TH **District** Court of **Wilson** County, State of **Texas**,

And that before the commission of the offense now charged above and after the previously mentioned conviction in Cause Number 357286 was final, STEVEN GREGORY SANCHEZ A/K/A STEVE EL LOCO", committed the felony offense of POSSESSION OF A WEAPON IN A PENAL INSTITUTION, and was convicted of such offense under the name of STEVE SANCHEZ, on the 4th day of **November, 1991**, in Cause Number 13,063-CR, in the 349TH District Court of Houston County, State of Texas,

During the punishment phase of the Applicant's trial, defense counsel objected to the enhancement paragraph number one (State's Exhibit No. 2), on the grounds that the State had not pled the proper sequence for the use of the enhancement paragraph in the indictment that the State alleged that the conviction was on the **20th day of August, 1984**, when the actually date of conviction was **January 19, 1983**, in which the Applicant (defendant) was given probation.

The probation in Cause No. 357286 was set aside, and defense counsel objected to any evidence concerning the first enhancement paragraph of the instant indictment, which is in Cause Number 357286, of the 185th District Court of Harris County, Texas. However, in State's response to the defense objection, the trial court overruled Applicant's objection to the fatal variance.

Applicant contends that the indictment alleged the prior conviction was on **August 20, 1984** in Cause Number **357286**. Certified copies of the complaint and judgment in said Cause Number 357286 showed conviction on **January 19, 1983.** Objection to State's Exhibit No. 2, on the ground of a variance between the allegations of the indictment and the proof as to the date proved, (S.F. Vol. XII. P. 13, 14 & 15), was made by defense counsel.

After the trial court overruled defense counsel's objection to State's Exhibit No. 2, the State introduced its Exhibit No. 3, which defense counsel made the following objection:

MR. DAVIDSON (Defense Counsel): The defendant objects to State's Exhibit No. 3 based on the same motion that I've made or argument I made to the Court in regard to the first paragraph of the indictment in that the State means to allege in the instrument, the exhibit that the Court has just admitted, the full situation; that is, that probation was granted and that it was then set aside, and therefore, we object to any exhibits following that enhancement on the same

23

basis since the paragraph concerning **Cause Number 357286** in the **185th** District Court of Harris Court, Texas, is not properly pled to give this defendant proper notice.

We object to any exhibits thereafter concerning any further allegations alleged in the indictment for enhancement purposes. (S.F. Vol. XII. P. 15).

Next, after a brief discussion between the prosecutor and the Court, State's Exhibit No. 4, a pen pack regarding a Burglary of A Building (Enhancement Paragraph 2 in Cause No. 6025, W86-01-010-CR of the 218th District Court of Wilson County, Texas) of the instant indictment. State's Exhibit No. 4, was also admitted as a business record. (S.F. Vol. XII. P. 21). The following discussion transpired:

MS. LOPEZ (State's Counsel): Your Honor, at this time I'd like to introduce State's Exhibit No. 4 as a business record. I had already filed it with the court prior to trial, back quite a few days prior to trial, and I'd like to get it admitted as a business record.

MS. DAVIDSON (Defense Counsel): We're going to object to it, Your Honor, on the same basis that we made on the other exhibits: That the State has offered in there to show that this defendant intelligently and knowingly waived his constitutional rights before entering into a plea of guilty in that case. (S.F. Vol. XII. P. 22). Over defense objection, State's Exhibit No. 4 was admitted.

Applicant contends that State's Exhibits were not

properly authenticated, in violation of **Tex. R. Crim. Evid. 901 and 102**, and therefore, was inadmissible.

Applicant contends further that the instant indictment alleged in the second paragraph that Applicant committed the felony offense of **Burglary of A Building** and was convicted on the **10th** day of **April, 1989**, in **Cause Number 6025,W86-01-010-CR**, in the **218th** District Court of Wilson County, Texas.

However, the records from the Prison Bureau of Classification will reflect that the Applicant was incarcerated on **April 10, 1989**, and could not have been convicted of Burglary of A Building, as alleged in the indictment. The instant indictment shows, on its face, that there is a material and fatal variance between the allegations in the indictment and the proof as to the date of conviction of the prior convictions in **Cause No. 6025,W86-01-010-CR** and Cause No. 357286.

In **French v. Estelle,** 692 F.2d 1021 (5th Cir. 1982), rehearing denied 696 F. 2d 318 (5th Cir. 1983), the Court held that, "The State must follow enhancement procedures in order to enhance a sentence." Writ of Habeas relief was granted in **Franch v. Estelle, supra,** since the State did not introduce evidence sufficient to show that the date on which the subsequent criminal act occurred was after any date on which the prior conviction was finalized.

Therefore, a material and fatal variance being shown, Applicant's conviction must be reversed and a new trial granted.

<u>GROUND OF ERROR No. 5:</u>

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY PROCEEDING WITH THE ENHANCEMENT OF PUNISHMENT WHEN THE STATE FAILED TO MEET ITS BURDEN OF PROOF TO ENHANCE PUNISHMENT WHERE THE PROOF DID NOT SHOW THAT THE APPLICANT'S PRIOR CONVICTION IN CAUSE No. 6025, W86-01-010-CR, WAS FINAL:

Applicant contends that when that State fails to prove the date on which the subsequent criminal act occurred was after the date on which the prior conviction was final constitutes reversible error. See, <u>French v. Estelle,</u> 692 F. 2d 1021 (5th Cir. 1982), rehearing denied 696 F. 2d 318 (5th Cir. 1983); <u>Ex parte Barfield,</u> 697 S.W. 2d 420 (Tex. Crim. App. 1985), and <u>Ex parte Benavides,</u> 696 S.W. 2d 582 (Tex. Crim. App. 1985).

In the instant case, in pertinent part, the indictment reads:

And that before the commission of the offense now charged above and after the previously mentioned conviction in Cause Number 357286 was final, STEVEN GREGORY SANCHEZ A/K/A STEVE EL LOCO", committed the felony offense of BURGLARY OF A BUILDING, and was convicted of such offense under the name of STEVE SANCHEZ, on the 10TH day of APRIL, 1989, in Cause Number 6025, W86-01-010-CR, in the 218TH District Court of Wilson County, State of Texas,

And that before the commission of the offense now charged above and after the previously mentioned conviction in Cause Number 357286 was final, STEVEN GREGORY SANCHEZ A/K/A STEVE EL LOCO", committed the felony offense of POSSESSION OF A WEAPON IN A PENAL INSTITUTION, and was convicted of such offense under the name of STEVE SANCHEZ, on the 4th day of November, 1991, in Cause Number 13,063-CR, in the 349TH District Court of Houston County, State of Texas,

Applicant contends that the State presented no evidence that the prior conviction in Cause No. 6025, W86-01-010-CR became final after the previous conviction in Cause No. 357286, therefore, no evidence was offered to prove the

<u>26</u>

finality of the prior conviction the State used for enhancement of Applicant's punishment. No harmless analysis is appropriate where there is no evidence of finality of the prior convictions.See, **Arriola v. State,** 811 S.W. 2d 697 **(Tex. App. – Houston [14th Dist.] 1991).**

Applicant contends that harm is shown because the prior conviction used for enhancement kept the Applicant from testifying at trial, and the enhancement paragraphs raised the minimum from 5 to 25 years, which also influenced the Applicant's 99 year sentence. Further, the enhancement paragraphs in the instant indictment prohibited the Applicant from filing an application for probation. See, **Ex parte Felton,** 815 S.W. 2d 733 (Tex. Crim. App. 1991).

Applicant contends that the judgment and sentence entered in this instant case is, therefore, void as having been entered in the absence of a valid indictment secured contrary to the First, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, and Article 1, Sections 10 of the Texas Constitution, and therefore, the conviction must be reversed and remanded for an entry of acquittal, because of serious violations Due Process which deprived the Applicant of a fair and impartial.

## GROUND OF ERROR No. 6:

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY PROCEEDING WITH TRIAL WHERE THE STATE FAILED TO ELECT ONE COUNT FROM THE TWO COUNT MURDER INDICTMENT IN CAUSE No. 92-CR-1384-A:**

In the instant case, the indictment in **Cause No. 92-CR-1384-A**, contains two counts of Murder arising out of the same criminal episode; the two counts were based on two different methods of committing murder. One under **Tex. Penal Code, Sec. 19.02(b)(1)**, and another under **Tex. Penal Code, Sec. 19.02(b)(2).**

The indictment in this instant case, in pertinent part, reads

**"IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS**

THE GRAND JURORS, for the County of Cameron, State aforesaid, duly organized as such at the JULY Term, A.D. 1992, of the 107TH JUDICIAL DISTRICT in and for said County, upon their oaths in said Court, present that STEVEN GREGORY SANCHEZ A/K/A "STEVE EL LOCO", SANTOS ADAMS AND MIGUEL HERNANDEZ GARCIA hereinafter called Defendants, on or about the 11TH day of MARCH A.D. One Thousand Nine Hundred and NINETY-TWO and anterior to the presentment of this indictment, in County of Cameron and State of Texas, did then and there unlawfully, intentionally and knowingly cause the death of PEDRO ZAPATA, JR., by shooting PEDRO ZAPATA, JR. with a Firearm,

AND THE GRAND JURORS aforesaid, upon their oaths in said court, present that Defendants, on or about the 11th day of March, 1992 and anterior to the presentment of this indictment, in the County of Cameron and State of Texas, did then and there unlawfully, with the intent to cause serious bodily injury to PEDRO ZAPATA, JR., commit an act clearly dangerous to human life that caused the death of PEDRO ZAPATA, JR., said act being: shooting PEDRO ZAPATA, JR. with a Firearm.

Applicant contends that the trial court committed reversible by proceeding to trial where the State failed to elect which count of murder it was relying upon for conviction. See, **Proctor v. State,** 841 S.W. 2d 1 (Tex. Crim. App. 1992); **Black v. State,** 158 S.W. 2d 795 (Tex. Crim. App. 1942); **Ex parte Preston,** 833 S.W 2d 515 (Tex. Crim. App. 1992).

## GROUND OF ERROR No. 7:

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY OVERRULING APPLICANT'S TIMELY REQUESTED SPECIAL CHARGE AND INSTRUCTION ON "ACCOMPLICE TESTIMONY":**

Under **Art. 38.14** of the Texas Code of Criminal Procedure, A witness for the State is an accomplice witness as a matter of law, and his testimony must be corroborated by other evidence when the proof shows:

1.  That he knowingly received fruit of the crime; or

2.  That he failed to timely disclose his knowledge of the transaction; or

3.  That he had guilty knowledge of the offense; or

4.  That he actively participate in the offense; or

5.  That he is under indictment for the same offense.

Where the witness is not an accomplice as a matter of law and an issue of fact arises as to whether a witness is an accomplice, the trial court must charge the jury as to their determination of the status of the witness. If they (jury) find that the witness is an accomplice, they must then find that his testimony was sufficiently corroborated.

In the instant case, the facts clearly shows that, Adrian Verrett, the State's principal witness, was an accomplice as a matter of law. The facts show that the State's witness, Adrian Verrett, concealed the murder of Pedro Zapata, Jr. for approximately one month before reporting it to the authorities.

During the trial in chief, Adrain Verrett, testified as follows:

CVisPDF - www.fasiio.com

Q. BY MS. LOPEZ (State's Counsel): Now, during this time, from the time that the killing occurred until when you told your friend and your sister, how did you cope with what had happened?

A. (Adrian Verrett): I didn't.

Q. What do you mean you didn't?

A. It was driving me crazy. Everybody, all my friends that would come over there were telling me that I was acting different. (S.F. Vol. VIII. P. 557).

---

Q. How did it affect you?

A. I had dreams. I would wake up in the middle of the night crying and screaming, sweating, and shaking. There were nights that I couldn't sleep.

Q. Now, once you told your sister, who was the next person that you talked to about this?

A. Well, I didn't tell nobody else. My sister called my mother at work that same night and told her.

Q. Did you ever talk to a Sgt. Ofelio Muniz?

A. Yes, Ma'am, I did.

Q. And how did that come about?

A. I was at my trailer one day asleep. My mother shows up and tells me to come outside. I go outside and she tells me, "look around you." And I looked around and there were cops all in my neighborhood. And at the time I didn't know it but Mr. Muniz was parked across the street. And she tells me, "They want to arrest you. They want to know what happened. They know that you were there." My Mother said that they went to her house and showed her pictures of me, Adames, Sanchez, and Zapata. When they got to my picture my mother told them, "What's wrong? Where's my baby? What's he done"? They said, "We want to question him about a murder." (S.F. Vol. VIII. P. 558).

The facts further reflects that, Adrain Verrett, drove to the sit of the killing on his on initiative, and not at the direction of the Applicant. (S.F. Vol. VIII. P. 516-14-25).

Further, pertinent to this error, and after the

Applicant was convicted and sentenced on October 17, 1993, Adrain Verrett, was placed in a jail cell with Aroldo Garcia. Garcia had been the court-appointed investigator for the Applicant. In the cell with Verrett and Garcia was a friend of Verrett's, Jose Gaona. <u>Verrett began telling Gaona about the killing of Pedro Zapata, Jr., and bragged about how he had shot and killed Pedro Zapata, Jr., over a dope deal and placed the blame on Steven Gregory Sanchez, the Applicant.</u> See, Applicant's Motion For New Trial (With attached affidavit of investigator, Arnoldo Garcia) Attached Hereto as Applicant's Exhibit "D".

On May 3, 1994, the trial court conducted a hearing as requested by the Court of Appeals. (S.F. Vol. II. P. 3-19). Applicant's first witness at the hearing was Sgt. George Garcia, custodian of records at the Cameron County Jail. Sgt. Garcia testified that the jail records showed that Arnoldo Garcia and (Adrain) Tony Verrett were in the same jail cell in October, 1993. Certified copies of the jail records were entered into the records. (S.F. Vol. II. 3-7). Arnoldo Garci. testified that he had been in jail when Verrett was placed in the same cell. Verrett did not recognize him and began bragging that he killed Pedro Zapata, Jr., over a dope deal and worked out with the State to blame Applicant. (S.F. Vol. II. . 5-17). The State was represented by its Assistant District Attorney, John Olson, at the hearing and offered no testimony or other evidence to controvert that of Arnoldo Garcia.

<u>31</u>

The facts aforesaid, did not only show that Adrain Verrett was an accomplice, but showed that he committed the murder of Pedro Zapata, Jr. Therefore, the trial court committed reversible error by overruling Applicent's requested charge that the jury be given an accomplice instruction.

During the punishment phase in this instant case, the following transpired:

THE COURT: All right. Let me ask the State first of all, do you any objection to the Court's Charge?

MS. LOPEZ: No, Your Honor, we don't.

THE COURT: The defense?

MR. DAVIDSON: Yes, Your Honor, we do, and it goes to Paragraph 5, the accomplice-witness portion of the charge.

First of all, we object that the Court has charged that the witness, State's witness, Adrain Tony Verrett, is to be determined whether or not be an accomplice witness as a matter of fact. That is for the jury to decide, whether his actions in this case, at the time in question, constitutes him an accomplice by the terms of the law of the State of Texas.

We feel that the evidence shows clearly that he is an accomplice as a matter of law and should be charged as an accomplice as a matter of law. At least if the evidence doesn't show, you know, beyond a reasonable doubt that he's an accomplice as a matter of law, there's a conflict, in my opinion, in the testimony as to whether he is or not, and in

that event, I cite a case, a Texas case that went all the way to the Supreme Court of the United States, tiled **Burns versus State** in which the Supreme Court of the United States held that if there is a conflict as to whether or not the witness was an accomplice, then the Court should charge the jury on the question of whether the witness was an accomplice as a matter of law.

I ask for a ruling on that first, Your Honor.

THE COURT: Okay. That objection will be overruled. (S.F. Vol. X. P 788, 789, & 790).

Applicant contends that the trial court committed reversible error by denying Applicant's request to have the jury charged on an accomplice as a matter of law. See both, Tex. Code Crim. Pro. art. 38.14 and Tex. Penal Code Sec. 15.03(b); <u>Tran v. State</u>, 870 S.W. 2d 654 (Tex. App. – Houston [1st Dist.] 1994, pet. ref'd); <u>Ex parte Zepeda</u>, 819 S.W. 2d 874 (Tex. Crim. App. 1991), and <u>Marlo v. State</u>, 720 S.W. 2d 496 (Tex. Crim. App. 1986).

Applicant contends that he was entitled to a jury charge on whether Adrian Tony Varrett was an accomplice as a matter of law, whose testimony required to be corroborated where he had participated in the events leading up to the shooting. Although he claimed to be surprised by the killing and acting in an unusual place of over a month, placing blame on the Applicant. Therefore, a facts issue was raised as to his status as an accomplice as a matter of law. See, <u>Ex parte Mitchell,</u> 601 S.W. 2d 376 (Tex. Crim. App. 1980) and <u>Cf. Ex</u>

**parte Thrash,** 167 Tex. Cr. 409, 320 S.W. 2d 357 (1959).

Under Texas Law, cases may not be sent to the jury on uncorroborated testimony of an accomplice. See, **Martin v. Estelle,** C.A.5 (Tex) 1982, 691 F. 2d 202, rehearing denied 693 F. 2d 133, certiorari denied 103 S. Ct. 1277, 460 U.S. 1024, 75 L. Ed. 2d 497.

An "Accomplice witness" is a discredited witness because her or his testimony alone cannot furnish basis for the conviction; no matter how complete a case may be made out by an accomplice witness or witnesses, the conviction is not permitted unless he or they are corroborated. **Walker v. State,** 615 S.W. 2d 728 (Tex. App. 1981). In **Hernandez v. State,** 636 S.W. 2d 181 (Tex. App. - [4th Dist.] 1982), the Court held that, "A chain is no stronger than its weakest link, and if the State must rely on the accomplice's testimony for some material fact without any corroboration whatsoever, the conviction cannot stand." See, **Mac Donald v. State,** 650 S.W. 2d 95 (Tex. App. [14th Dist.] 1982).

In **Throcker v. State,** 999 S.W. 2d 56 (Tex. App. - Houston [14th Dist.] 1999), the Court held that, 'jury' instruction errors that result in egregious harm, requiring reversal even if error was not preserved by objection, are those which affect the very basis of the case, deprive the defendant of a valuable right, or vitally affect a defense theory. Vernon's Ann. Texas C.C.P. art 36.19-Id.

In the instant case, to reiterate, the State did not prove that Applicant held the gun that fired the bullets that

killed Pedro Zapata, Jr. Arguably, if Verrett's testimony is to be considered competent, the most he proved is that Applicant was at the scene of the crime. There is no other evidence to either place Appellant at the scene of the crime or establish that Applicant killed Pedro Zapata, Jr.

During the final summation at the punishment phase, defense counsel (Mr. Davidson) argued the following:

Now, the Court and Mrs. Trevino have talked to you about the accomplice-witness rule. And the Court has left it for you to decide about whether Tony Verrett was an accomplice-witness to the killing in this case because our law--for instance, in federal court you can convict someone on the testimony of an accomplice alone. The judge instructs you it has to be done very carefully and all these things, but in Texas you can't, see.

And what did Tony Verrett tell us? He told us, I think, everything that the State wanted to hear from him, and I don't mean for a minute, folks, that anybody connected with the State's case indicated or told Tony Verrett what to say. I think he made up his own, because I think there are better lawyers than that and I sure know that Sgt. Ofelio Muniz is a better police officer than that. But you saw him testify, folks. You heard the things that he said that he wanted you to believe.

He says, first of all, he didn't get up until eleven o'clock that morning; that this defendant showed up at his

CSMPDF - www.fastio.com

trailer home with a 6-pack of beer. He drank the beer, went after another 12-pack; that he smoked four marijuana cigarettes, that he drove, smoking some more marijuana cigarettes, and drinking some more beer. He can't give us one particular time. "I don't remember." Okay? And you know why I think he doesn't remember? Because he knew that someplace, somehow someone was going to place this defendant someplace else. That why.

He can't even remember who gave him the directions. Use your common sense, folks. Here is a man, by all the testimony that you have to consider in this courtroom, who moved here in January to Brownsville, Texas, in 1992 and he's given directions to a place that I doubt many of us in this courtroom could find without some directions. And the only one that really knew the area was Tony Verrett.

Now, Sgt. Muniz said that the deceased lived in that area, and whether he did or not--but, you know, I think you can conclude it certainly wasn't this defendant that was giving the directions out there to where this body was found.

Now, he says that they drove around and drove around and drove around smoking cigarettes. He was smoking marijuana and went on these various things, and then finally someone said that they had to relieve themselves and urinate.

You know, I don't know how many gas stations or places he went by just to-- I don't think it's logical that whoever went out there went out there just to relieve themselves, you know. I think, you know, that it was set up by Mr. Verrett,

either **acting alone** or **with somebody else** because he is the
catalist in this whole thing.

**He says in his statements,** "My goodness, I didn't even
know this was the father of a friend of mine" until he was
told by a friend of his that he had such a guilty conscience
he went back out there to examine the scene of the murder.

And I don't know what else he lied about but I know one
thing, he either has a bad memory or he lied about what
happened at the scene of the killing. And the autopsy report
shows it. (S.F. Vol. X. P. 789- & 795, 798, through 814).

Other than Varrett's testimony there is nothing to
place Applicant at the scene of the crime.

"An accused cannot be convicted under an indictment
charging him as a principal where the proof shows only that
his guilty connection with the offense was that of an
accomplice or accessory." **Jones v. State,** 505 S.W. 2d 903
(Tex. Crim. App. 1974).

In the instant case, the State attempted to prove, but
failed to prove a conspiracy to kill Pedro Zapata, Jr.

According to the affidavit of investigator Arnoldo
Garcia, that during a conversation in the cell, **Tony Verrett**
**bragged about how he had shot and killed Pedro Zapata, Jr.,**
**over a dope deal and placed the blame on the Applicant,**
**Steven Gregory Sanchez.**

Arnoldo Garcia's affidavit further showed that Verrett
stated that he had worked a deal with the authorities to

testify against the Applicant, Steven Gregory Sanchez, to escape prosecution.

In the instant case, Verrett's own statement showed that during the course of a drug deal which soured, a murder was committed, that he killed Pedro Zapata, Jr., and shifted the blame to the Applicant to escape criminal prosecution.

Applicant requests this Court to scrutinize the testimony of State's chief witness, Adrain Tony Verrett very carefully because without this witness, there is no evidence to prove Applicant's presence at the scene of the crime let alone his complicity in the crime. The trial court did not reach the question of prejudicial effect the testimony of Adrain Verrett had on the Applicant's conviction, but rather only maintained that since the testimony was relevant to the matter at issue, it was admissible.

In this instant case, the facts showed that Adrain Verrett was a discredited witness and had an extended criminal history. Since this witness, Verrett's testimony is the sole testimony linking Applicant with the crime and it was on Verrett's testimony alone that the Applicant was convicted, it strains credibility to maintain that his testimony do not constitute perjury under the particularized circumstances in this instant case.

"The accomplice witness rule is not required by common law or the federal constitution; rather, it reflects a legislative determination that accomplice testimony

implicating another person should be viewed with a measure of caution, because accomplices often have incentives to lie, such as to avoid punishment or shift blame to another person." Vernon's Ann. Texas C.C.P. art. 38.14. See, **Blake v. State,** 971 S.W. 2d 451 (Tex. Crim. App. 1998).

In **Blake v. State, supra,** the Court held that, "When an accomplice witness testifies it is the Jury's task to determine whether the testimony has been sufficiently corroborated. Some witnesses are accomplices as a matter of law."

The Court further held that, "If there exists no doubt or the evidence clearly shows that a witness is an accomplice witness as a matter of law [then] 'the court is under a duty to so instruct the jury.'" **Blake v. State,** 971 S.W. 2d 451 (Tex. Crim. App. 1998); **Matthews v. State,** 999 S.W. 2d 563 (Tex. App. - Houston [14th Dist.] 1999); **DeBlanc v. State,** 799 S.W. 2d 701 (Tex. Crim. App. 1990). See also, **Gomez v. State,** 737 S.W. 2d 315, 322 (Tex. Crim. App. 1987).

Applicant has painstakingly pointed out to this Court that Adrain Tony Verrett could definitely be prosecuted and charged with the murder of Pedro Zapata, Jr.

Therefore, it is the contention of the Applicant that the trial court committed reversible error by failing to give the jury an accomplice-witness instruction in this instant case.

## GROUND OF ERROR No. 8:

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO INSTRUCT THE JURY ON THE LAW OF PARTIES AND THE PARTY THEORY OF CRIMINAL RESPONSIBILITY:**

To be convicted as a party, a defendant must be involved in an offense which does not necessarily require more than one participant, and the jury must be instructed on the party theory of criminal responsibility.

In the instant case, in pertinent part, the indictment alleged that, "STEVEN GREGORY SANCHEZ A/K/A/ "STEVE EL LOCO", SANTOS ADAMES AND MIGUEL HERNANDEZ GARCIA, hereinafter called the Defendants, on or about the 11TH day of MARCH A.D. One Thousand Nine Hundred and NINETY-TWO and anterior to the presentment of this indictment, in the County of Cameron and State of Texas, did then and there unlawfully, intentionally and knowingly cause the death of PEDRO ZAPATA, JR., by shooting PEDRO ZAPATA, JR. with a firearm."

In the instant case, Applicant contends that the State failed to prove an agreement to commit murder by defendants, no corroboration, and there was no evidence to convict Applicant of conspiracy to commit murder.

It is absolutely clear from the present state of the record, that the State explicitly plead in its indictment that the Applicant "acted with others" as a party to commit the offense alleged. See, **Horton v. State**, 880 S.W. 2d 22 (Tex. App. - Tyler 1994) and **Plata v. State**, 875 S.W. 2d 344 (Tex. App. - Corpus Christi 1994, pet. grnt'd). See also, V.T.C.A, Texas Penal Code, Secs. 7.01 7.02.

**40**

Applicant contends that the court's charge to the jury did not provide the abstract definitions on the law of parties and the party theory of criminal responsibility under, Secs. 7.01 and 7.02 V.T.C.A. of the Texas Penal Code.

Applicant further contends that the court's charge to the jury failed to properly apply the law of parties to the facts of the case and, as a direct result, Applicant was harmed because it permitted the jury to convict him of murder for conduct he neither committed nor attended. See, **Clark v. Louisiana State Penitentiary**, 694 F. 2d 75 (5th Cir. 1982).

Therefore, it is the contention of the Applicant that he was deprived of a fair and impartial trial [V.A.C.C.P., art. 36.19] by jury and was denied of Due Process of the law when the court's charge failed to properly apply the law to the facts of the case, thus causing this Applicant egregious harm because it is obvious from the record, in this instant case, that the jury was misled. **Almanza v. State**, 686 S.W. 2d 157 (Tex. Crim. App. 1984).

Applicant contends that the trial court committed reversible error in light of **Almanza v. State, supra.**

Applicant contends that the abstract portion of the court's charge to the jury failed to instruct the jury on whether or not Applicant was to be convicted for "individually" committing the offense of murder, or "as a party" thereto. See, **Alexander v. Louisiana,** 405 U.S. 625, 633, 92 S. Ct. 1221, 31 L. Ed. 2d 535 (1972) and **Ridgeway v. Hutto,** 474 F. 2d 22 (8th Cir. 1973).

## GROUND OF ERROR No. 9:

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT ALLOWED THE PROSECUTION TO IMPROPERLY ADMIT, OVER OBJECTION, EVIDENCE AT THE PUNISHMENT PHASE:**

A new punishment hearing is required where evidence was improperly admitted over objection at the punishment hearing if harm is shown.

In the instant case, at the punishment phase, on several instances, the prosecution improperly admitted evidence of unadjudicated offenses and other bad acts of the Applicant that was inadmissible under the **Tex. Code Crim. Pro. art. 37.07 Sec. 3(a)**, and its highly prejudicial nature was not harmless error. See, **Stone v. State,** 870 S.W. 2d 692 (Tex. App. – Beaumont 1994, pet. ref'd).

During the punishment phase in this instant case, the prosecutor told the jury that officer, James Nickson will be telling them Applicant attacked another inmate and almost killed him while in the penitentiary. At the punishment phase, the following transpired:

By MS. LOPEZ:

"The officers will be testifying that even among the smaller group he (Applicant) was the bad of the bad. They will be testifying and telling you, one of the officers, James Nickson will be telling you while there at the penitentiary he attacked another inmate and almost killed him." (S.F. Vol. XII.  P. 8).

Under **Tex. Code Crim. Pro. art. 37.07 Sec. 3(a)**, after amendment, evidence of the defendant's prison misconduct is only admissible if it meets the criteria of the **Tex. R. Crim. Evid. 405(b)**, prior misconduct may not be admitted unless character is an element of the charge, claim or defense. In

non-capital cases, character is not an "element" at the punishment phase. The error is not harmless. See also **Jolivet v. State,** 811 S.W. 2d 706 (Tex. App. - Dallas 1991).

In the instant case, Applicant contends that character was not an element in the case, and the admission of his prison misconduct was calculated to inflame the minds of the jury and prejudiced the Applicant.

Next, the prosecutor told the jury that a parole officer will be telling them that after Applicant was released from the penitentiary he had some charges pending. The following transpired at the punishment phase:

By MS. LOPEZ:

"There will be evidence that after he (Applicant) was released from the penitentiary he had some charges pending, and so he had to go to another jail, and in that jail he had to be held there for those charges." (S.F. Vol. XII. P. 7).

**Grunsfeld v. State,** 843 S.W. 2d 521 (Tex. Crim. App. 1992), controls the disposition of the admissibility of the extraneous. The Texas Court of Criminal Appeals has observed that under **Grunsfeld,** evidence of extraneous offenses is not admissible during the punishment stage of non-capital cases unless it is a prior criminal record under **C.C.P.** art. 37.07.

That Court found that **C.C.P.** art. 37.07 Sec. 3(a), defines a "prior criminal record" as "a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial or any final conviction material to the offense charged."

43

In the instant case, Applicant contends that the State's witness, Ms. Connie Gonzalez's testimony that Applicant had charges pending did not constitute a prior criminal record and that, therefore, the trial court erred in admitting the testimony. (S.F. Vol. XII. P. 74)

During the punishment phase, Ms. Gonzalez testified as follows:

BY MS. TREVINO:

Q.  Okay. And when would that have been with relation to when he was paroled to San Antonio?

A.  It was December of '91.

Q.  Was that when he was first paroled?

A.  No. He was paroled 1/12 of '91 to detainer, one to Starr County and the other to Houston County. He had charges pending. (S.F Vol. XII. P. 7 & 74).

Thereafter, the other prosecutor, MS. LOPEZ permitted Mr. Nickson to tell the jury that Applicant was placed in administrative-segregation because he was a threat to the general population and he was a member of the Texas Syndicate.

At the punishment phase, Mr. Nickson testified as follows:

BY MS. LOPEZ:

Q.  Now, how did you meet this individual that you identified as the defendant?

A.  He was an inmate housed in one of our administrative-segregation housing areas that I work at.

Q.  So he was not in the general population?

A.  No. Ma'ma. He was at one time in the general population,

**44**

and he was later placed into Ad-Seg after an incident involving a fight where he had a weapon and was places into Ad-Seg. And later he was confirmed to be a Texas Syndicate member.

Q. So he was put in that section for two reasons: because he was a Texas Syndicate member and because of this fight that he had?

A. Yes. His assaultive behavior was not just one case. He had several cases against him." (S.F. Vol. XII. P. 33, 34).

Applicant contends that the admission of State's evidence, Ms. Martha Jackson's testimony at the penalty phase that the Applicant was a member of the Texas Syndicate violated Applicant's right under the First and Fourteenth Amendments to the United States Constitution, because to evidence was not relevant on punishment or to reput the Applicant's good character. See **Damson v. Delaware,** 112 S. Ct. 1093 (1992).

In **Dawson v. Delaware, supra,** Admission of evidence, at the penalty phase, that the defendant was a member of the Aryan Brotherhood violates U.S. Const. Amend's. I and XIV.

In **Dawson v. Delaware, supra,** the Court further held that, "The evidence, offered by stipulation, showed only that the Aryan Brotherhood was a white racist organization with chapters in prisons, including Delaware prisons. There was no showing that the defendant's membership provided a motive for the crime (the defendant and the victim were both white), and no showing that the Aryan Brotherhood committed or endorsed illegal acts."

Therefore, the trial court committed reversible error

**45**

by permitting Ms. Jackson's testimony that the Applicant was a confirmed member of the Texas Syndicate.

Next, as discussed herein above, Ms. Jackson testified and told the jury that the Applicant was placed in administrative-segregation because of he was a threat to the general population, because he was a member of the Texas Syndicate, and because of a fight he had while in the penitentiary. (S.F. Vol. XII. P. 34).

Applicant contends that it was reversible error to admit Ms. Jackson's testimony that the Applicant was in administrative-segregation because he was a threat to the general population.

Applicant contends that because he received the maximum punishment of 99 years, these aforementioned errors were not harmless beyond a reasonable doubt in the punishment phase of the instant case. See **Mayes v. State,** 819 S.W. 2d 877 (Tex. App. Tyler 1987) and **Henson v. State,** 794 S.W. 2d 385 (Tex. App. - Dallas 1990), pet. ref'd).

## GROUND OF ERROR No. 10:

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY OBTAINING A CONVICTION AGAINST THE APPLICANT WHERE THERE WAS NO EVIDENCE TO SUPPORT APPLICANT'S CONVICTION FOR THE ALLEGED MURDER BEYOND A REASONABLE DOUBT, WHERE THE APPLICANT DENIED COMMITTING THE OFFENSE AND ANOTHER INDIVIDUAL BRAGGED OF COMMITTING SAID OFFENSE:

The burden of proof is the State to establish beyond a reasonable doubt that the Applicant committed the offense alleged. **Hightower v. State**, 389 S.W. 2d 674 (Tex. Crim. App. 1965) and **Ex parte Barfield**, 697 S.W. 2d 420 (Tex. Crim. App. 1985). There is no evidence to support Applicant's conviction for murder, where the State failed to establish that the Applicant was criminally liable for the death of Pedro Zapata, Jr.

A claim of evidentiary insufficiency is insufficient to state a claim for relief pursuant to Article 11.07. **Ex parte Easter,** 615 S.W. 2d 719 (Tex. Crim. App. 1981).

A claim of **no evidence,** on the other hand, is cognizable. **Ex parte Moffett,** 542 S.W. 2d 184 (Tex. Crim. App. 1976); **Ex parte Reynold,** 588 S.W. 2d 900 (Tex. Cr. App. 1979), and **Jackson v. Virginia,** 443 U.S. 307, 99 S. Ct. 2781 (1979).

In the instant case, the evidence adduced at Applicant's trial indicated that a young couple found the body of Pedro Zapata, Jr., behind the municipal auditorium in Harlingen, Cameron County, Texas and reported it to the Harlingen Police Department. Preliminary investigation failed to identify the perpetrator of the homicide.

The State presented its first witness, Detective Ofelio Muniz. (S.F. Vol. II. P 31-32) Detective Muniz was with the Harlingen Police Department. He testified that he received information that the mother of Adrain Tony Verrett had told a probation officer that her son knew about the death of Pedro Zapata, Jr., and that he, Verrett, was present and the driver of the vehicle involved in shooting. (S.F. Vol. VI. P. 157-159). Based upon the information obtained from Verrett, Applicant was arrested on April 20, 1992 and placed in jail.

The Applicant was then charged with the murder of Pedro Zapata, Jr., on October 14, 1992. (Tr. I 8-9)). The indictment alleged that Applicant committed the offense of murder on or about March 11, 1992.

The State's evidence up to this established point amounted to no more than suspicious circumstances constituting less than a reasonable doubt against the Applicant. The jury was not instructed to convict the Applicant if they found he acted alone, or with another.

The State's case rested entirely upon the testimony of Adrain "Tony" Verretr. (S.F. Vol. VIII. 422-23) and (S.F. Vol. VIII. 519-16-25).

Adrain Verrett testified that when the deceased said he needed to relieve himself, Verrett drove to the site of the killing. After arriving at the deserted area, the deceased got out of the car to relieve himself. Verrett told the jury that Applicant followed the deceased and as the deceased was

**48**

urinating. Applicant shot him several times. (S.F. Vol. VIII.
P. 516-525).

However, after the Applicant was convicted and
sentenced on October 19, 1992, Adrain "Tony" Verrett was
place in a jail cell with Arnoldo Garcia. Mr. Garcia had been
the court-appointed investigator for defense counsel and the
Applicant. While in the cell with Verrett and Garcia was a
friend of Verrett's, Jose Gaona. **Verrett began telling Gaona
about the killing of Pedro Zapata, Jr., and bragged to Gaona
and Garcia about how he had actually killed Zapata, Jr., over
a drug deal and then framed the Applicant.** An affidavit was
taken from Garcia and counsel for the Applicant filed an
out-of-time Motion For New Trial with the trial court. See,
Applicant's Motion For New Trial (With attached affidavit of
investigator, Arnoldo Garcia) Attached Hereto as Applicant's
Exhibit "D".

However, during the hearing on Applicant's Motion For
New Trial, the Honorable Benjamin Euresti, acknowledged that
the credibility of the testimony of the State's witnesses
(Verrett) and other witnesses were questionable. See,
(Hearing On Motion For New Trial Page 29-30).

Applicant contends that where the evidence raises a
reasonable hypothesis consistent with the accused's
innocence, by definition a rational trier of fact could not
have found guilt beyond a reasonable doubt. See, **Garrett v.
State,** 682 S.W. 2d 301 (Tex. Crim. App. 1984).

**49**

The evidence so far reviewed, points equally to the guilt of only Adrain "Tony" Verrett.

The principal piece of evidence the State presented to link the Applicant to the offense was Adrain "Tony" Verrett's testimony that the Applicant shot Pedro Zapata, Jr.

After drinking several six packs of beer, smoking marijuana cigarettes, doing cocaine, and having gave two different statements of what the Applicant allegedly did, and having failed to immediately report the crime to the police, Verrett's testimony is simply not worthy of belief.

Applicant recognizes the general rule that the credibility of witnesses will not be reviewed on appeal. **Bowden v. State,** 628 S.W. 2d 782 (Tex. Crim. App. 1982). However, at some point the credibility of a witness is so undermined that a reviewing court cannot have confidence in a verdict supported solely by the witnesses' testimony. Applicant would urge that Verrett's testimony in Applicant's trial is such a case.

The burden of proof is on the State to prove each and every element of the offense beyond a reasonable doubt. **Mullaney v. Wilbur,** 421 U.S. 684, 95 S. Ct. 1881, 44 L. Ed. 2d 508 (1975); **In re Winship,** 397 U.S. 358, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970); **Wright v. State,** 603 S.W. 2d 838 (Tex. Crim. App. 1980). Tex. Penal Code Ann. Sec. 2.01 (Vernon Supp. 1997). The standard of review is whether a rational trier of fact could have found each element of the offense beyond a reasonable doubt. **Jackson v. Virginia,** 443

U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

In the instant case, a rational trier of fact could not have found, beyond a reasonable doubt, the Applicant was criminally liable for the death of Pedro Zapata, Jr.

Where there is no evidence to sustain a conviction, double jeopardy bars a retrial. **Burks v. United States,** 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978); **Greene v. Massey,** 437 U.S. 19, 98 S. Ct. 2151, 57 L. Ed. 2d 15 (1978).

Therefore, this Court should reverse Applicant's conviction, and order a judgment of acquittal.

## GROUND OF ERROR No. 11:

**THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FAILING TO GRANT DILIGENT APPLICANT'S TIMELY MOTION FOR NEW TRIAL:**

**Tex. Code Crim. Pro. art. 40.001:** "A new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial."

**Tex. R. App. Pro. 30(b):** A new trial shall be granted an accused for the following reasons:

(1) Except in a misdemeanor case when maximum punishment may be by fine only, where the accused is an individual who has been tried in his absence. . .or has been denied counsel;

(2) Where the court has misdirected the jury as to the law or has committed some other material error calculated to injure the rights of the accused;

(3) Where any material witness of the defendant has by force, threats or fraud been prevented from attending the court, or where any evidence tending to establish the innocence of the accused has been intentionally destroyed or withheld preventing its production at trial.

In the instant case, the Applicant's attorney filed two motions for new trial. Applicant's first motion for new trial was filed on April 12, 1993, wherein trial counsel moved the court to grant Applicant a new trial for the following reasons:

1. Because the verdict as to the guilt and punishment of the Defendant's is contrary to the law and evidence.

2. The Court erred in denying Defendant's requested charge that State's witness Adrein "Tony" Verrett was an accomplice witness as a matter of law.

3. The Court erred in not quashing the jury panel upon Defendant's Motion after one of the members of the jury panel, Oilean Patterson, the wife of a Federal prosecutor in

Brownsville, Texas, made the unsolicited statement that she was aware the Defendant had been in the penitentiary because she had seen him in Federal court.

4.     The Court erred in allowing Rico Garica to testify concerning the Texas Syndicate, its operation and the Defendant's connection with the same, including his record from the Texas Prison System as the Defendant had a constitutional right to be tried upon the accusation contained in the indictment and not as a common criminal. This testimony was a violation of the Motion In Limine granted by the court concerning the disclosure of the Defendant's prior criminal record and his constitutional right to a fair and impartial trial by a fair and impartial jury.

5.     The Court erred in overruling Defendant's Motion for a Mistrial during the testimony of the State's witness, Rico Garica, when the prosecutor pointed at the Defendant and asked the witness what was the Defendant's connection with the Texas Syndicate, which was a direct comment on Defendant's right to not testify, and violated his right to a fair and impartial trial by a fair and impartial jury.

6.     The Court erred in the charge on punishment in that prior to the hearing on punishment, the portions of the indictment concerning punishment were not read and the Defendant did not plead to the same and to proceed with the punishment hearing without Defendant's plea of not true was a violation of the Defendant's Constitutional rights to be tried by a fair and impartial jury and the effective assistance of counsel.

7.     The Court erred in denying Defendant's Motion To Suppress the search warrant of the 1991 Pontiac Sunbird because the search warrant authorized the search of a place and not a vehicle.

8.     Prior to the jury selection, the Defendant filed and the Court granted his Motion In Limine concerning his prior criminal record. During the trial, on 5 or 6 different occasions, State's witnesses testified about the Defendant's prior criminal record and though the court granted the Defendant's objection to said testimony and instructed the jury to disregard the same, because of the numerous times Defendant's prior criminal record was brought to the jury's attention, the jurors could not remove this fact from their minds in determining the Defendant's guilt or innocence and thereby denied Defendant the right to a fair and impartial trial by a fair and impartial jury, the effective assistance of counsel, and due process of law.

As set out above, the court should have granted Applicant's Motion For New Trial based upon these numerous material errors that were calculated to injure the rights of the Applicant.

Applicant contends that the trial court committed an abuse of discretion by overruling Applicant's Motion For New Trial on the above cited errors. See Applicant's Motion For New Trial Attached Hereto as Applicant's Exhibit "B".

In **State v. Evans,** 843 S.W. 2d 576 (Tex. Crim. App. **1992), after remand,** 876 S.W. 2d 459 (Tex. App. – Texarkana **1994),** the Court held that, "The list of reasons requiring a new trial contained in **Tex. R. Pro. 30(b)** is illustrative, not exhaustive." See, **State v. Gonzalez,** 855 S.W. 2d 692 **(Tex. Crim. App. 1993).**

The trial court has broad authority in ruling on Motion For New Trial base upon errors committed during the course of a criminal trial, and the motion is addressed to the sound discretion of the trial judge. **Williams v. State,** 504 S.W. 2d 477 (Tex. Crim. App. 1974). However, where it can be shown that the trial court clearly abused its discretion in denying a motion for new trial, then reversal of the conviction is required. **Thomas v. State,** 796 S.W. 2d 196 (Tex. Crim. App. 1990).

Next, on November 19, 1992, trial counsel for the Applicant filed its second Motion For New Trial base upon newly discovered evidence.

**54**

In addressing this argument, it is necessary to reiterate the Facts of the Facts the case and the issue on the hearing on the Motion For New Trial.

In the instant case, the State's case rises or falls on Adrain "Tony" Verrett's testimony. However, the entire point of state constitutional grant of authority to review factual sufficiecy is precisely to allow this Court to review credibility. Applicant urges this Court to exercise this discretion, and find that the State's case against this Applicant is not credible enough to sustain a conviction.

The facts reveals that the State's case rested entirely upon the testimony of Adrain "Tony" Verrett. Verrett testified that he met Applicant through his sister, Carla Wright, a topless dancer, in February, 1992 (S.F. Vol. VIII. P. 492-23). He and Applicant became friend and began partying together and using drugs (S.F. Vol. VIII. P. 495-14-25). He further testified that on March 11, 1992, Applicant came by his trailer house between 11:00 A.M. and 12:00 noon. (S.F. Vol. VIII. P. 504-4) and they began drinking beer at the trailer house and they went to purchase more beer at a local convenience store, Verrett was driving the vehicle owned by Applicant's girlfriend. Applicant directed Verrett to drive to a Coastal Mart store where he made a telephone call (S.F. Vol. VIII. P06-9-10). After making the phone call, Applicant directed Verrett to drive to an Exxon Station on tyler Street

in Harlingen, Texas, where the deceased was picked up. After picking up the deceased, they drove around for a while and then decide to purchase cocaine (S.F. Vol. VIII. 509-5-25). The trio then continued to drive around drinking the beer and using the cocaine. When the deceased said he needed to relieve himself, Verrett drove to the site of the killing. After arriving at the deserted area, the Deceased got out of the car to relieve himself. Applicant followed the deceased and as the deceased was urinating, Applicant shot him several times. After shooting the deceased, Applicant removed a small black book from his pocket (S.F. Vol. VIII. P. 516-14-25). After the shooting, Verrett then at the Applicant's direction, drove to Weslaco, Texas where Applicant made a telephone call. (S.F. Vol. VIII. P. 524-4-25). After making the telephone call, Applicant directed Verrett to drive to the Santos Adames residence outside Mission, Texas (S.F. Vol. VIII. 527-1-18).

After Applicant was convicted and sentenced on October 17, 1993, Verrett was placed in a jail cell with Arnoldo Garcia. Mr. Garcia had been the court-appointed investigator for Applicant. In the cell with Verrett and Garcia was a friend of Verrett's, Jose Gaona. Verrett began telling Gaona about the killing of Pedro Zapata, Jr., and bragged to Gaona and Garcia how he had actually killed Zapata, Jr., over a drug deal and then framed Applicant. An affidavit was taken from Garcia and an out-of-time Motion For New Trial was filed

<u>56</u>

in this Court. After considering the motion the Court of Appeals ordered the trial court to conduct a hearing on the motion and forward its findings of Facts and Conclusions of Law to that Court.

On May 2, 1994, the trial court conducted a hearing as requested by the Court of Appeals. (S.F. Vol. II. P. 2-25).

Applicant's first witness at the hearing was Sgt. George Garcia, custodian of the records at the Cameron County Jail. Sgt. Garcia testified that the jail records showed that Arnoldo Garcia and Tony Verrett were in the same jail cell in October, 1993. Certified copies of the jail records were entered into the records. (S.F. Vol. II P. 2-7).

Applicant's final witness Arnoldo Garcia testified he had been in jail when Verrett was placed in the same cell. Verrett did not recognize him and began bragging that he had killed Pedro Zapata, Jr., over a dope deal and worked out a deal with the State to blame Applicant. (S.F. Vol. II. 8-9).

The State was ably represented by its Assistant District Attorney, John Olson at the hearing on Applicant's Motion For New Trial and offered no testimony or other evidence to controvert that of Arnoldo Garcia. On May 11, 1994 the trial court forwarded its Findings of Facts and Conclusions of Law to the Court of Appeals. The Court of Appeals then requested the trial court to determine the merits of Applicant's Motion For New Trial based upon its judgment of the credibility of the witnesses.

CutePDF - www.fastio.com

On November 3, 1994, the trial court conducted a second hearing in which Verrett denied making any statement that he had killed Pedro Zapata, Jr. A third witness, Jose Gaona, denied he told Applicant's attorney that Verrett had made such statements. The trial court then denied Applicant's motion (S.F. Vol. V. .2-3?).

Applicant contends that the trial court should have granted the Applicant a new trial after the hearing on May 2, 1994 when the State offered no controverting evidence to the testimony of Arnoldo Garcia. See, **Villarreal v. State,** 788 S.W. 2d 672 (Tex. App. [13th Dist.] 1990).

Applicant further contends that due proceed requires that he be granted a new trial so that a different jury can view the testimony of State's witness Verrett, in light of the statement made contrary to trial testimony.

Applicant contends that where the evidence at trial boils to the credibility between the the State's witnesses and the Accused, the trier of fact is especially entitled to know about any information which would assist in it determining who is telling the truth. See, **Skelton v. State,** 655 S.W. 2d 302 (Tex. App. -Tyler 1983, rev. refused). The issue of motive or bias to fabricate a story against the accused is never irrelevant, and is very much probative on the ultimate issue of guilt.

Likewise, in this instant case, Applicant's case boils down, to a certain extent, to the Applicant's word against

CVisPDF - www.fenrir.com

Adrain "Tony" Verrett's. It was Adrain "Tony" Verrett's testimony which made the State's case. The jury was entitled to learn the circumstances of his statement to investigator Arnoldo Garcia.

Evidence which tends to establish bias or motive to fabricate is not irrelevant or collateral. See **Koehler v. State,** 679 S.W. 2d 6 (Tex. Crim. App. Crim.). In **Virts v. State,** 739 S.W. 2d 25 (Tex. Crim. App. 1987), the Court wrote:

> Thus, <u>any</u> relevant testimony, that might aid the jury in deciding the credibility of such a witness should usually be admitted into evidence <u>unless the opposing party can give valid legal reasons why it should not.</u> 739 S.W. 2d at 31.

In the instant case, Applicant contends that the jury should have been allowed to hear the contents of Verrett's statement that he killed Pedro Zapata, Jr.

Applicant contends that the trial court committed reversible error by failing to grant Applicant's Motion For New Trial based upon the newly discovered evidence of Verrett's statement to investigator Arnoldo Garcia.

In **State v. Reynolds,** 893 S.W. 2d 156 (Tex. App. - Houston [1st Dist.] 1995), the Court held, "The trial court properly granted the defendant's motion for new trial on the grounds of newly discovered evidence where, after trial, defense counsel discovered a letter from the defendant's wife and children which was relevant to his intent."

In **State v. Adames,** 860 S.W. 2d 737 (Tex. App. - Houston [1st Dist.] 1993, pet. grnt'd), the Court held, "The

trial court did not abused its discretion when it granted a motion for new trial based on newly discovered evidence consisting of testimony of a co-defendant who was acquitted at his severed trial. At the time of the earlier trial, the defendants knew that the co-defendant would not waive his Fifth Amendment privilege. This testimony was not merely cumulative, and a new trial was proper."

In **State v. Gonzalez,** 855 S.W. 2d 692 (Tex. Crim. App. 1993), the Court held, "The trial court properly granted a new trial in the interest of justice where the defendant alleged that new evidence would be presented at sentencing, and the state did not contest the allegations of the motion. Such motions are properly reviewed using an abused of discretion standard."

In **Meriwether v. State,** 840 S.W. 2d 959 (Tex. App. Beaumont 1992, pet. ref'd), the Court held, "In support of his motion for a new trial the defendant offered newly discovered evidence which was favorable to him, and while cumulative, was corroborative of his own testimony, the trial court abused its discretion in denying the motion for new trial."

In **Harris v. State,** 827 S.W. 2d 442 (Tex. App. - San Antonio 1992), the Court held, "Evidence that an undercover officer who had testified against the defendant, had tampered with physical evidence, and had filed charges against innocent people was a good cause for filing of an out-of-time

motion for new trial based on newly discovered evidence."

In the instant case, Applicant contends that the trial court should have granted the Applicant's Motion For New Trial based on his newly discovered evidence which showed he was innocent and that Adrain "Tony" Verrett bragged to Arnoldo Garcia and Jose Gaona that he killed Pedro Zapata, Jr., over a dope deal and worked out a deal with the State to place the blame on the Applicant.

Applicant contends that Verrett's statement made to investigator Arnoldo Garcia was material, not merely cumulative, corroborating or impeaching, and would probably produce another and different result on another trial, neither defense counsel nor Applicant had knowledge of such statement, and that such was not the result of want of diligence on the part of the Applicant or his counsel.

Therefore, it is the contention of the Applicant that the trial court abused its discretion in failing to grant Applicant's Motion For New Trial based on the newly discovered evidence of the statement of Adrain "Tony" Verrett.

**GROUND OF ERROR No. 12:**

THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO GRANT APPLICANT'S TIMELY MOTION FOR MISTRIAL BECAUSE OF PREJUDICIAL CONDUCT OF THE PROSECUTING ATTORNEY IN PERSISTENTLY DISREGARDING THE TRIAL COURT'S RULING:

The United State Supreme Court in **Brady v. Maryland,** 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), held that "The Due Process Clause of the Fourteenth Amendment forbids the government in criminal cases from suppressing evidence favorable to an accused, where such evidence is material either to guilt or punishment." Id., at 87. **Brady** also requires disclosure of evidence which might serve to impeach the testimony of adverse witnesses. **United States v. Gaston,** 608 F. 2d 607 (5th Cir. 1979).

To invoke the **Brady** doctrine, three factors must co-exist: (1) the prosecution suppresses or withholds evidence, (2) which is favorable, and (3) material to the defense. **Moore v. Illinois,** 408 U.S. 786, 92 S. Ct. 2552, 33 L. Ed. 2d 706 (1972); **United States v. Auten,** 632 F. 2d 478 (5th Cir. 1980), and **Monroe v. Blackburn,** 607 F. 2d 148 (5th Cir. 1979).

Texas Court of Criminal Appeals has listed several factors it would consider fatal indications of a prosecutor failing to fulfill its constitutional duty to disclose evidence favorable to the accused, as required by **Brady.** Some of these indications are (1) actively suppressing evidence which **might** have been of importance to the defense, (2) painting a false picture of facts by **using perjured**

62

**testimony,** (3) failing to correct its own testimony when it became apparent that it was false, and (4) bad faith on the part of the prosecutor. **Appleman v. State,** 531 S.W. 2d 806 (Tex. Crim. App. 1976, reh., den.).

The prosecution's bad faith will be urged as a separate argument herein below. However, the other factors listed by the Texas Court of Criminal Appeals in **Appleman** are inextricable bound to the **Brady** violations, and fit the facts of this instant case well.

In this instant case, prior to jury selection, Applicant filed his "Motion In Limine" requesting that the State be prohibited from bringing before the jury the fact that Applicant had a past criminal record and in fact had been in the penitentiary (T-I-124). On March 15, 1993 again prior to jury selection, a hearing on the motion was held and the court granted Applicant's motion and ordered the State not to bring before the jury the fact that Applicant had been previously convicted of felony offenses and had served time in the penitentiary (T-I-4). However, the prosecutor elicited from it witnesses the facts that Applicant had a criminal record, had been in the penitentiary, and was on parole, in violation of Applicant's Motion In Limine. Most of the prohibited testimony was elicited from the witnesses even after being admonished by the court not to do so. On each and every occasion, this testimony was objected to, a request to

instruct the jury to disregard the testimony, and a motion for mistrial was made. The court sustained each objection, instructed the jury to disregard the statements made, but denied the motion for a mistrial.

Applicant contends that the first error the trial court committed occurred during the voir dire and jury selection, where the court failed to grant Applicant's motion to quash the entire jury panel because of the outburst of juror Dilean Patterson. Juror No. 35, that her husband was an attorney for the U.S. government and felt that she seen the Applicant in federal court and asked had he been sent to the penitentiary, which placed defense counsel in the position to say, "I don't know at this time."

Applicant contends that the trial court should have dismissed the entire jury panel because of the outburst of juror Dilean Patterson, because her statement was highly prejudicial and inflammatory, and that it tainted the entire jury panel to a degree of harm that no instruction cure the error, therefore, it deprived Applicant of a fair and impartial trial. (S.F. Vol. V. P. 42 - 50-56).

During voir dire examination and jury selection, the following occurred:

BY MR. DAVIDSON (Defense counsel):   And if that were true-- Yes, ma'am?

PANEL MEMBER: (Dilean Patterson):   I'm sorry.  Has the defendant been in prison before?

MR. DAVIDSON:  You know--

PANEL MEMBER:  The reason I'm saying that is, my husband was a prosecutor in court and I believe I'm starting to realize I

may have seen this man before.

MR. DAVIDSON:  Your husband is a federal prosecutor?

PANEL MEMBER:  He's a federal prosecutor now.

MR. DAVIDSON:  I don't think we're going to reach you anyhow but I appreciate your candor. (S.F. Vol. V. P. 42).

Next, during the trial in chief, the first elicited testimony came from Sgt. Ofelio Muniz, who testified that he obtained a picture of Applicant from his parole officer. (S.F. Vol. VI. P. 160-7-25) and (S.F. Vol. VI. P. 160-1-12).

During the trial Sgt. Muniz, testified as follows:

BY MS. LOPEZ (State's counsel):

Q.  Now, based on this information that you received, did you obtain a picture of this defendant?

A.  (Sgt. Muniz):  Yes, I did.

Q.  And who gave you that picture?

A.  There were two pictures given to me. One was the mother of the eyewitness that produced this picture when she came over to talk to me.

The second picture was obtained from the <u>parole officer.</u>

MR. DAVIDSON (Defense counsel):  Well, Your Honor, I'm going to object to this. This is violative of the rulings of this Court on the motion in limine, and I'm going to move for a mistrial at this time. (S.F. Vol. VI. P. 160).

The trial court sustained defense counsel's objection, instructed the jury to disregard the statement, but denied a mistrial. (S.F. Vol. VI. P. 151-1-10). However, trial counsel for the Applicant's inexplicable stated that Sgt. Muniz's testimony was unsolicited when, in fact, it was elicited as a result of the prosecutor's tactics of deploying harm against the Applicant. After this prejudicial testimony by Sgt.

Muniz, the trial court felt it necessary to instruct the State to talk to all of its witnesses and tell them not to mention anything about parole, parole papers, officers or anything dealing with the penitentiary so there would be no problem of a mistrial. (S.F. Vol. VI. P. 181 -1-2).

Next, even after the court had instructed the prosecutor to tell its witnesses not to mention anything dealing with the penitentiary and, while Sgt. Muniz was testifying, the prosecutor elicited from him if the defendant was a member of the "Texas Syndicate." Again, at objection was made by defense counsel and the court call both counsels to the bench and admonished the prosecutor not to ask that type of question. (S.F. Vol. VI. F. 181 -1-21). Nevertheless, the minds of the jurors had been poisoned with the fact that Applicant had been in the penitentiary and was on parole. No curative instruction the court could have given would have cured this highly prejudicial and inflammatory error.

Another State's witness, Christina Ontiveros, testified and told the jury that Applicant had told her he was going to see his probation officer. This prejudicial testimony was elicited from Ms. Ontiveros, by the prosecutor, even after continuous instructions from the trial court not to mention anything dealing with parole, parole papers, officers or that Applicant had been in the penitentiary. (S.F. Vol. VII. F. 422-1-21). Ms. Ontiveros testified as follows:

66

BY MS. LOPEZ (State's counsel):

Q. Do you know where he was?

A. (Ms. Ontiveros): Well, he was there with me an hour before they arrested him. He told me that he was going to see his probation officer.

MR. DAVIDSON (Defense counsel): Your Honor, I'm going to object. It going into matters we've already gone into. The Court has instructed the State to caution their witnesses. It violates the motion in limine that the Court ruled on.

This is the third time, and I ask the Court to sustain my objection and instruct the jury to disregard the last statement by this witness.

THE COURT: All right. I'll sustain the objection of counsel and instruct the jury to disregard the last remark, and you're not to take that into consideration.

MR. DAVIDSON: And at this time I again will move for a mistrial, Your Honor, on the same basis, that this is the third time that a witness has come out with testimony that the Court has advised the State, not only under my motion in limine but in an admonishment in the courtroom to comply with the motion in limine, and after the third time I know there's no way that this jury can set aside what she's testified to, plus the officer who was in charge of the investigation and the comment made by the prosecutor in this case, and therefore denying this defendant a fair and impartial trial by a fair and impartial jury.

THE COURT: I'll deny the motion for mistrial. (S.F. Vol. VII. P. 422).

Even after being admonished for the fourth time, the prosecutor elicited from the next witness, Adrain "Tony" Verrett, that Applicant had been in prison for murder. (S.F. Vol. VIII. P. 551-552 1-25) and S.F. Vol. VIII. 553 -1-9).

Mr. Verrett testified as follows:

Q. BY MS LOPEZ (State's Counsel): Now, when did you next see the defendant after he shot Pedro Zapata?

A. (Mr. Verrett) Well, I was working one day at a friend of mine's shop, and the defendant and his girlfriend Diane; I saw him pass by and he stopped. He got off the car and he was upset because I had told Christina's mom that he was in prison for murder, which he told me.

MR. DAVIDSON (defense counsel): Your Honor, I'm going to object. This is the fourth time that the witness has come out with this type of testimony after all of the efforts that we went through to file our motion in limine and which was granted by the Court and then the District Attorney's Office was instructed to please instruct their witnesses to refrain from mentioning anything about the word "penitentiary," "Prison," or anything else and now we're back to our fourth time.

I'm going to ask the Court to instruct the jury to-- I object to the testimony based upon the Court's ruling on my motion in limine and ask the Court to instruct the jury to disregard the last statement made by this witness concerning the violation of the motion in limine and the previous ruling of this Court.

THE COURT: I'll sustain the objection, and I'll instruct the jury to disregard the last comment and not to take that into consideration in your deliberations.

MR. DAVIDSON: And to protect the record, Your Honor, I again move for a mistrial on the basis that this is the fourth time that the State has, through their witnesses, violated the rulings of this Court, not only on Monday before this jury was selected but during the course of this trial. There have been four different times, and, as I said before, these jurors are human beings and it's impossible for them to erase that from their minds when they determine the guilt or innocence of this defendant and therefore violating his right to a fair and impartial trial by a fair and impartial jury.

THE COURT: I'll deny that motion. (S.F. Vol. VIII. P. 552 and 553).

The next State's witness to tell the jury Applicant had been in Huntsville prison was Rico Garcia. Officer Garcia testified as follows:

Q. BY MS LOPEZ (State's counsel): Now, when Sgt. Muniz contacted you, what was the purpose in contacting you?

A. Sgt. Muniz advised that he had an execution style murder, described it to me.

At that time he told me of the tattoos that the victim had.

I told him that the name of the victim was a confirmed member of the Texas Syndicate.

He gave me the first name and the nickname of the suspect that he was looking for. At that time I researched the name and nickname, contacted my sources in Huntsville, and we came up with the name, confirmed name of the suspect.

Q. (Mr. Rico Garcia): Now, what name was given to you to research?

MR. DAVIDSON (Defense counsel):   Well, Your Honor, in addition to the relevancy, I'm going to object on the basis of my motion in limine I have here, and may we approach the bench?

THE COURT:  You may.

(Informal discussion between the Court and Counsel at the bench.)

THE COURT:  You have an objection?

MR. DAVIDSON:   Yes. We object to any further testimony by this officer in regard to what was conveyed to him by Sgt. Ofelio Muniz and his beginning to check records, Huntsville or otherwise, as a violation of the motion in limine that we filed in this Court which was heard last Monday and granted by this Court. And I feel that any further testimony by this officer, even though I still state that it's not relevant to this case, is inadmissible under the rulings of this Court in my motion in limine, especially Paragraph 5 which the Court granted.

THE COURT:  All right. That objection will be overruled, and I'll instruct the jury to disregard the last statement.

MR. DAVIDSON:  Pardon me?

THE COURT:   I'll instruct the jury to disregard the last statement. The objection is overruled.

MR. DAVIDSON:  My objection is overruled or it's sustained?

THE COURT:  The objection is-- Well, I'm sorry. The objection is sustained, and I'm instructing the jury to disregard the last statement. I apologize. (S.F. Vol. VIII, P. 528, 529).

Officer Garcia testified he was an experienced officer and went all over the State of Texas to testify. In fact he testified that he spent most of his time testifying and did very little routine police work. This being the case, surely

if the State had instructed him about the court's ruling in granting the Applicant's motion in limine, as an experienced officer he understood the same. Either the State did not advise him of the court's ruling or he chose to ignore the ruling. Again, and again trial counsel had to object to the testimony of the State's witnesses, especially, officer Garcia's testimony. The testimony of the State's witnesses was objected to and motion for mistrial was made and overruled by the trial court.

Applicant contends that the prosecutor continued to elicit testimony from its witnesses about Applicant's criminal background after being instructed by the court time after time to advise its witnesses not to mention anything about parole, parole papers, officers or that Applicant had been in the penitentiary, which such action and inaction by the prosecutor deprived the Applicant of a fair and impartial trial by a fair and impartial jury. **Dexter v. State,** 544 S.W. 2d 426 (Tex. Crim. App. 1976).

The following instances of prosecutorial misconduct will reveal that in a calculated ploy to deprive Applicant of a fair and impartial trial, the prosecutor for the State deliberately misstated its case to the jury during the trial in chief, during its opening and close statement, and during its final summation. The prosecutor's action and inaction in this instant case consists of the following:

The indictment in this instant case, referred to

70

Applicant as "A/K/A STEVE El Loco." This was done by the State to inflame the minds of prospective jurors. Trial counsel for the Applicant filed a motion to set aside the indictment based the name "A/K/A STEVE El Loco." Trial counsel argued that:

MR. DAVIDSON: All right. Next is defendant's motion to set aside the indictment. The part that I'm referring to, there's a part in there, the indictment has indicted this young man as "A/K/A El Loco." We're stating and alleging that that was done by the State simply to try to inflame the minds of prospective jurors. It has no basis to be included in the indictment at all and we're asking that it be eliminated.

MS. LOPEZ: Your Honor, the State objects to it. That is the way the defendant is known and has referred to himself in the community, and that's the name that he gave himself. That's part of the indictment.

THE COURT: I'll deny that motion. (S.F. Vol. III. P. 5, 6).

During closing statement at the punishment phase, the prosecutor elicited from its witness, James Nickson, that Applicant was referred by his nickname as "El Loco." The following occurred:

Q. BY MS. LOPEZ: Would you ever hear the inmates calling him by a nickname?

MR. DAVIDSON: Your Honor, I'm going to object as leading and suggestive, and I object to the form of the question.

THE COURT: I'll sustain the objection.

MS. LOPEZ: Did you ever hear him called by any name other than "Steve Sancher"?

A. (James Nickson): Yes, ma'am.

Q. And what name was that?

A. "El Loco." (S.F. Vol. XII. P. 34, 35)

71

Applicant contends that the prosecutor should not refer to a defendant by any name other than his given name, nor by any generic term designed to subject the defendant to personal abuse or suggest that he is "less than human." **Stell v. State,** 711 S.W. 2d 746 (Tex. App. – Corpus Christi 1986, no pet.).

Applicant contends that the conduct of the prosecutor in this instant case referring to him as "El Loco," could serve no other purpose than to deprive the Applicant of a fair and impartial trial by prejudicing the jury against him. **Dakin v. State,** 632 S.W. 2d 864 (Tex. App. – Dallas 1982).

Next, in this instant case, the prosecutor injected her own personal opinion and vouched for the credibility of a witness. An assistant investigator, Alfredo Flores, for the Applicant, on cross-examination, testified as follows:

Q. BY MS. LOPEZ: Would you be nervous if you had five people around you?

A. (Alfredo Flores):  Yes, ma'am.

Q.  You're more honest than the other gentleman.

MR. DAVIDSON:  Your Honor, that's uncalled for, side-bar remark, and I object to it.

MS. LOPEZ:  Your Honor, I'll withdraw it.

MR. DAVIDSON:  I'll ask the Court to instruct the jury to disregard whether she withdraws it or not.

THE COURT:  I'll sustain the objection and instruct the jury to disregard it. (S.F. Vol. IX, P. 780, 781).

Applicant contends that when a prosecutor believes that any particular witness was honest or told the truth is

reversible error. **Menefee v. State,** 614 S.W. 2d 167 (Tex. Crim. App. 1981).

Moreover, during closing summation, the prosecutor referred to the Applicant's failure to testify. The following transpired:

And, you know, Adrain sat here; okay? And he sat here for quite a while. You a chance to look at Adrain. You had a chance to compare Adrain to this defendant.

MR. DAVIDSON: Your Honor, I'm going to object to that. That's a comment on the defendant's failure to testify.

MS. LOPEZ: No, Your Honor, it's not.

MR. DAVIDSON: Let me finish my objection, please. And I object to it and ask the Court to instruct the jury to disregard the statement.

THE COURT: I'll overrule it.(S.F. Vol. X. P. 815).

Applicant contends that it was reversible error for the prosecutor to comment on the Applicant's failure to testify, which was a violation of Fifth Amendment. For the prosecutor to comment on the Applicant's failure to testify. **Giffin v. California,** 380 U.S. 609, 85 S. Ct. 1229, 14 L. Ed. 2d 106 (1965) and **Norton v. State,** 851 S.W. 2d 341 (Tex. App. – Dallas 1993, pet. ref'd).

Applicant contends that the prosecutor's comment on Applicant's failure to testify was so inflammatory that the trial court's instruction to disregard did not cure the error. **Sauceda v. State,** 859 S.W. 2d 459 (Tex. App. – Dallas 1993, pet. ref'd).

Again, at the punishment phase in this instant case,

73

the prosecutor, after being continuously instructed by the court not to mention anything about parole, parole papers, officers or that Applicant had been in the Penitentiary, told the jury that Applicant was a member of the Texas Syndicate. The prosecutor's closing summation went as follows:

MS. LOPEZ: Is Adrain going to tell him, hey, he was being pulled into this by this defendant?

A day before, a day before the killing there was a meeting of the Texas Syndicate. And remember, Rico came and he testified and he told you the hierarchy of that organization. And then the next day Pedro Zapata was killed. (S.F. Vol. X. P. 816, 817).

Applicant contends that the trial court granted Applicant's Motion in Limine and instructed the prosecutor not to make reference to "Texas Syndicate," which the prosecutor repeatedly referred to the "Texas Syndicate" throughout the trial in chief and at the punishment phase of the Applicant's trial. **Dexter v. State,** 544 S.W. 2d 426 (Tex. Crim. App. 1976) and **Dawson v. Delaware,** 112 S. Ct. 1093 (1992).

In **Dexter,** the Court held, "Display during trial of the State's file cabinet labeled "organized crime" and prosecutor's efforts to connect the appellant with "organized crime" after the court had sustained the defendant's motion in limine to make no reference to "Syndicate." "organized crime" or "mafia"... was reversible error.

Applicant contends that the reference to the "Texas Syndicate," was not relevant on punishment or to rebut the Applicant's good character evidence.

74

Next, at the punishment phase, the prosecutor submitted pen packets of prior convictions to the jury to inspect without properly proving the prior conviction beyond a reasonable doubt. The pen packets were inadmissible because they contained false information and convictions which were not committed by the Applicant. The prosecutor further admitted harmful and inadmissible pen packets into evidence and were utilized at the punishment phase to influence the jury to assess the maximum punishment of ninety-nine (99) years. The prosecutor admitted the pen packets and void prior convictions, and admitted one of them as a business record. State's Exhibite No, 1, 2, 3, and 4 were admitted into evidence. (S.F. Vol. XII. P. 13 thus 22). State' Exhibit No. 4, was admitted as a business record. (S.F. Vol. XII. P. 21). See **Grunsfeld v. State,** 843 S.W. 2d 521 (Tex. Crim. App. 1992).

In **Grunsfeld,** the Court held that, "The provision of Tex. Code Crim. Pro. art 37.07 Sec. 3(a) allowing admission of any evidence deemed relevant to sentencing does not permit evidence of unadjudicated acts of misconduct which are inadmissible under the rules of evidence and, if extraneous offenses, are not "prior criminal record" under **Tex. Code Crim. Pro. art. 37.07 Sec. 3(a)."** See, also **Brooks v. State,** 853 S.W. 2d 603 (Tex. App. - Houston [1st Dist.] 1993).

Applicant contends that the prosecutor acted in bad faith when she admitted the pen packets of void prior convictions into evidence at the punishment phase.

Further, in this instant case, Adrain "Tony" Verrett's perjured testimony did not come to light until after Applicant was convicted and sentenced. On October, 17, 1993, that Adrain "Tony" Verrett was placed in a jail cell with Arnoldo Garcia. Mr. Garcia had been the court-appointed investigator for the Applicant. In the cell with Verrett and Garcia was a friend of Verrett's, Jose Gaona. Verrett began telling Gaona about the killing of Pedro Zapata, Jr., and bragged to Gaona and Garcia how he had actually killed Zapata, Jr., over a dope deal and worked out a deal with the State to blame Applicant. (S.F.-II-8-19). On May 2, 1994, Arnoldo Garcia testified at the hearing on Applicant's Motion For New Trial that he had been in jail when Verrett was placed in the same cell. That Verrett did not recognize him and began bragging that he had killed Pedro Zapata, Jr., over a dope deal and worked out a deal with the State to blame Applicant. At the hearing, the State was represented by its Assistant District Attorney, John Olson and he offered no testimony or other evidence to controvert that of Arnoldo Garcia.

As aforementioned, at the hearing on Applicant's motion for new trial, the State offered no evidence to controvert that of investigator, Arnoldo Garcia.

Applicant contends that the prosecution was aware of the perjury nature of Adrain "Tony" Verrett's testimony. Therefore, Applicant is entitled to a new trial so that a different jury can view the testimony of the State's witness

Adrain "Tony" Verrett, especially in light of the statements made contrary to trial testimony.

Even the Honorable Benjamin Euresti, acknowledged that the credibility of the testimony of the State's witnesses was questionable, but still denied Applicant's motion for new trial. (S.F. Evidentiary Hearing Vol. III. P. 29, 30).

Applicant contends that prosecutorial misconduct can vitiate the fundamental fairness of a proceeding and thereby constitutes a deprivation of Due Process of Law. **Anderson v. State,** 525 S.W. 2d 20 (Tex. Crim. App. 1978) and **Houston v. Estelle,** 569 F. 2d 372 (5th Cir. 1978).

Applicant contends that the actions of the prosecutor in the instant case during the presentation of evidence can leave not doubt that she knew exactly what she was doing when violating Applicant's rights to a fair and impartial trial by a fair and impartial jury.

Applicant contends that the State's prosecutors in the instant went far beyond implying facts which they could not prove, but rather presented statements masquerading as facts which they knew were not provable.

When the prosecution deliberately present a false picture of facts by knowing being perjured testimony, the court should not hesitate to reverse the judgment of conviction. See **Means v. State,** 429 S.W. 2d 490 (Tex. Crim. App. 1968).

In the instant case, although the manner of the State's

presentation of the evidence shows that the prosecutor knew better, and that Adrain "Tony" Verrett's testimony was false.

However, the facts in the instant case reveals that the State's prosecutors did not only rely on its witnesses to speak falsely, but rather directly, repeatedly and knowingly presented a false picture of facts themselves.

Applicant further contends that the actions of the Cameron County Assistant District Attorneys' in this instant case displays a clear picture of the prosecution acting in bad faith in convicting an innocent person when the facts show that the crime was committed by someone other than the Applicant. See **Ex parte Adams,** 768 S.W. 2d 281 (Tex. Crim. App. 1989); Duggan v. State, 778 S.W. 2d 465 (Tex. Crim. App. 1989), and **Davis v. State,** 831 S.W. 2d 426 (Tex. App. – Austin 1992, pet. ref'd).

Applicant contends that misconduct of the prosecution and its witnesses, contradictory statements, and perjured testimony made by the State's Chief Witness Adrain "Tony" Verrett, Applicant was deprived of a fair and impartial trial, in violation of the Due Process Clause of the Sixth and Fourteenth Amendments to the United States Constitution, and Article 1, Sections 10 and 19 of the Texas Constition.

Therefore, the Applicant's conviction should be reversed and an order of acquittal entered.

## GROUND OF ERROR No. 13:

**APPLICANT DID NOT RECEIVE REASONABLE EFFECTIVE ASSISTANCE OF COUNSEL DURING THE COURSE OF HIS CRIMINAL TRIAL:**

The right of a criminal defendant to be represented by counsel is a fundamental component in our criminal justice system. **United States v. Cronic,** 466 U.S. 648, 104 S. Ct. 2039, 2043, 80 L. Ed. 2d 657 (1984). Effective assistance of counsel is essential to assure defendant's fundamental right to a fair trial, because it is through counsel that a defendant's other rights are secured and the prosecution's case is subjected to a meaningful adversarial testing. The adversarial process protected by the Sixth Amendment requires that the accused have "counsel acting in the role of an advocate." **Id. at 2045.** See also, **Strickland v. Washington,** 466 U.S. 668, 104 S. Ct. 2052, 2063, 80 L. Ed. 2d 674 (1984). The individual states have great latitude in defining what constitutes reasonable professional assistance. **Nix v. Whiteside,** 475 U.S. 157, 106 S. Ct. 988, 994, 89 L. Ed. 2d 123 (1986).

On the other hand, counsel owes a duty of loyalty to his client. Loyalty is the most basic of counsel's duties. **Strickland v. Washington,** 466 U.S. at 692, 104 S. Ct. at 2067. Moreover, counsel has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. Id. at 685, 104 S. Ct. at 2063.

Among counsel's duties is that of making an independent

79

investigation of the facts of his client's case, regardless of the client's representations. **Ex parte Ewing,** 570 S.W. 2d 941, 947 (Tex. Cr. App. 1978); **Ex parte Duffy,** 607 S.W. 2d 507, 516-517 (Tex. Crim. App. 1980). In addition to acquainting himself with the facts, counsel must also acquaint himself with the law involved in the case if he is to render reasonably effective assistance of counsel. **Flores v. State,** 576 S.W. 2d 632 (Tex. Crim. App. 1978). The express purpose of the required investigation is to enable defense counsel to: "have a firm command of the facts of the case as well as governing law." **Ex parte Duffy, supra,** at 516.

In Texas, a defendant in a criminal case is entitled to reasonably effective assistance of counsel. **Wilkerson v. State,** 726 S.W. 2d 542 (Tex. Crim. App. 1986) cert. denied, 480 U.S. 940, 107 S. Ct. 1590, 94 L. Ed. 2d 779 (1987). In **Strickland v. Washington,** 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 1984), the Supreme Court held that in order to show ineffective assistance of counsel, a convicted defendant must (1) show that his trial counsel's performance was deficient, in that counsel made such serious errors he was not functioning effectively as counsel, and (2) show that the deficient performance prejudiced the defense to such a degree that defendant was deprived of a fair trial.

The **Strickland** standard has been adopted in Texas for resolving allegations of ineffective assistance of counsel

CVISPDF - www.texto.com

under both the federal and state constitutions. **Hernandez v.
State,** 726 S.W. 2d 53, 56-57 (Tex. Crim. App. 1987).
However, **Ex parte Cruz,** 739 S.W. 2d 53, 58 (Tex. Crim. App.
1987), held that the standard to be applied at the penalty
stage of the trial was that of **Ex parte Duffy,** 607 S.W. 2d at
514, 516 (counsel reasonably likely to render and rendering
reasonable effective assistance). See **Ex parte Walker,** 777
S.W. 2d 427, 430-31 (Tex. Crim. App. 1989).

The primary argument in this instant case is that the
Applicant was denied effective assistance of counsel as
guaranteed by the Fifth, Sixth and Fourteenth Amendments to
the Constitution of the United States and Article 1, Sections
10 and 19 of the Texas Constitution which so effected the
trial as to render the jury's verdict unreliable. In this
particular regard, Applicant has set forth several instances
of this perfunctory trial as clearly indicated that he was
denied Due Process and Due Course of the law and whose
representation by trial counsel was such in the jury even in
appearance of fairness in an impartial trial.

As will be more fully discussed below, each instance
which Applicant raised by his grounds of error are reflective
of counsel's failure to effectively represent Applicant.
In a trial primarily a reference was indicated in
argument to the Applicant, as counsel fail to pursue
an independent investigation into the facts of the case, and

by this failure, counsel was unaware of the fact that there were a third search and a letter which were introduced into evidence that were critical to Applicant's defense. (S.F. Vol. VII. P. 427).   Applicant contends that there were more merits to his defense that were not presented at trial and, because of counsel's lack of investigation, he was unprepared to render reasonably effective assistance during trial in chief. During the trial, officer Ofelio Muniz testified that he obtained an arrest warrant and a search warrant for Applicant's arrest in connection with the alleged offense. The facts show that officer Muniz initiated his investigation on the sole basis of information received from Adrain "Tony" Verrett, and his initial encounter with the Applicant was based exclusively upon Verrett's information and not on the basis of having observed any illegal activity on behalf of the Applicant.   However, trial counsel failed to object to the admission of State's Exhibit No. 50 and 51, photos of Santos Adames, the owner of the house and a photo of the person found inside the house when he executed the search warrant. Also, the photograph displayed the person with an automatic handgun in his waistband that was identified by Verrett as being similar to the one used in commission of the offense. (S.F. Vol. VI. P. 170, 171). Officer Muniz further testified that he showed these (Photo's Exhibit No. 50 and 51) to the eyewitness and asked him if there was anything in there that he recognized. Muniz stated that the eyewitness

(Verrett) recognized the handgun there resembled what he thought he saw, the same handgun that he saw that Defendant (Applicant) used to shoot the victim.

2.      Trial counsel's performance was deficient and prejudicial to the Applicant when counsel inexplicably objected and stated that, "I don't thank any instruction that this Court can now give this jury can remove from their minds this unsolicited (Rather then solicited) testimony by this officer."(S.F. Vol. VI. P. 161, 162-63). Trial counsel, by this improper statement of unsolicited testimony, rather than solicited testimony, waive the error for appellate review.

3.      Trial counsel's performance was deficient and prejudicial to the Applicant when counsel's entire trial representation was ineffective and fell below the objective standard of reasonableness. Should the Court find any of the errors alleged in this writ have sufficient merits, then obviously, the Court should find that Applicant did not receive reasonable effective assistance of counsel during the trial of his criminal case.

4.      Trial counsel's performance was deficient and prejudicial to the Applicant when counsel, at the punishment stage, permitted the State to introduce into evidence State's Exhibits 4, 5, 6 and 7, which contained judgments of conviction offenses, and to argue evidence and testimony which the State relied upon during final summation to persuade the jury that Applicant was incapable of being

rehabilitated and needed to be incarcerated for the rest of his life. However, State's enhancement paragraph 4 was a conviction committed by Santos Adames, not the Applicant. In this regard, State's Exhibit No. 2, reflects a judgment of conviction and sentence which, on its face, is void as a matter of law. **Samudio v. State,** 648 S.W. 2d 312 (Tex. Crim. App. 1983). State's Exhibit No. 4, on its face, is likewise inadmissible for reason that the judgment and sentence was not properly authenticated. See **e.g., Dingler v. State,** 723 S.W. 2d 805 (Tex. App. - Tyler 1987). There is no indication that trial counsel pursued an investigation as to the validity of the prior convictions or made some effort to take advantage of TEX. R. CRIM. EVID. 404 and 609(f). Not only did the jury find Applicant guilty, but it in fact assessed Applicant's punishment at ninety-nine (99) years imprisonment. **Walker v. State,** 777 S.W. 2d 427, 430-31 (Tex. Crim. App. 1989).

In sum, trial counsel left Applicant's right to be presumed innocent and the State's constitutional duty to produce legally competent and admissible evidence establishing guilt "beyond a reasonable doubt" naked, thus allowing the prosecutors and the trial court to strip Applicant of his constitutional protections.

Although a fair review of the analysis of this entire case will find that the deficient assistance of counsel rendered his representation of the Applicant perfunctory, the

APPLICANT'S EXHIBIT "A"
(A copy of Judgment and Sentence)

ChiPDF – www.fasuo.com

②

Sánchez #640839

CAUSE NO. 92-CR-1384-A —/

| | | |
|---|---|---|
| THE STATE OF TEXAS | ) | IN THE DISTRICT COURT OF |
| VS | : | CAMERON COUNTY, TEXAS |
| STEVEN GREGORY SANCHEZ | ) | 107TH JUDICIAL DISTRICT |

### JUDGMENT ON JURY VERDICT OF GUILTY
### PUNISHMENT FIXED BY JURY - NO PROBATION GRANTED

Judge Presiding: Benjamin Euresti, Jr.    Date of Judgment: 3-23-93

Attorney   Migdalia Lopez              Attorney
for State:  Toni Trevino              for Defendant: Jerrold Davidson

Offense
Convicted of: Murder

                                        Date Offense
      Degree: Habitual Offender       Committed:  March 11, 1992

Charging
Instrument: Indictment

Plea      : "Not Guilty"

Jury Verdict: "Guilty"                Foreman: Tim Goodman

Plea to Enhancement                   Enhancement
Paragraph(s): ✓                       Paragraphs: Found True by Jury

Findings on Use    Jury made affirmative finding that defendant used
of Deadly Weapon:  a deadly weapon in the commission of this offense.

Punishment
Assessed by:  Jury

Date
Sentence Imposed:  March 23, 1993              Costs: $106.50

Punishment and                                 Date to
Place of Confinement: 99 YEARS TDCJ-ID         Commence: 3-23-93

                                        Total Amount of
Time Credited:  342 DAYS                Restitution/Reparation: n/a

Concurrent Unless Otherwise Specified. n/a

   BE IT REMEMBERED that on the 15th day of March, 1993, this

cause was called to trial and the State appeared by her Assistant

Criminal District Attorney, and the Defendant, Steven Gregory

Sanchez, appeared in person, his counsel by appointment, the Hon.

Jerrold Davidson also being present, and the Defendant, having

been duly arraigned, pleaded Not Guilty and both parties

announced ready for trial; thereupon a jury of twelve good and

lawful persons, to wit:  Tim Goodman and eleven others, was duly

③

*Sanchez #640834*

THEREAFTER, on March 16, 1993, the indictment was read to the jury and the Defendant entered his plea of Not Guilty thereto whereupon the State introduced evidence through March 18, 1993 and rested. Defendant's motion for directed verdict denied. Defendant's motion for mistrial denied.  Case was recessed until March 19, 1993.

THEREAFTER, on March 19, 1993, the Defendant introduced evidence whereupon State offered rebuttal evidence.  All parties closed and the jury was sent home until March 22, 1993, whereupon the charge was prepared and submitted to all counsel.

THEREAFTER, on March 22, 1993, the Court charged the jury as to the law applicable to said cause and argument of counsel for the State and the Defendant was duly heard and concluded, and the jury retired in charge of the proper officer to consider their verdict, and after ward was brought into open court by the proper officer, the Defendant and his counsel being present, and in due form of law returned into open court the following verdict, which was received by the Court and is here now entered upon the Minutes of the Court, to wit:

"We, the Jury, find the defendant, Steven Gregory Sanchez,
"GUILTY" of Murder as charged in the indictment.

/s/  Tim Goodman
Presiding Juror"

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED by the Court that the Defendant, Steven Gregory Sanchez, is guilty of the offense of Murder as found by the jury, and that said offense was committed on March 11, 1992.

THEREUPON, the Defendant, having previously elected in writing to have his punishment assessed by the same jury, the same jury was duly empaneled to assess said Defendant's punish-

THEREAFTER, on March 23, 1993, the Court charged the jury
with additional instructions as to the law applicable to punish-
ment of said cause and arguments of State and Defendant were duly
heard and concluded and the jury retired in charge of the proper
officer to consider their verdict as to Defendant's punishment,
and thereafter returned into open court, accompanied by the
proper officer, the Defendant and his counsel being present, and
in due form of law, the following verdict, which was received by
the Court is here now entered upon the Minutes of the Court, to
wit:

### "FORM 1. - VERDICT AS THIRD OFFENDER

We, the Jury, having found the defendant, Steven Gregory
Sanchez, guilty of the offense of Murder, as alleged in the
indictment, further find that the allegations in Paragraphs Three
and Four of the indictment herein are "True," and that the defen-
dant is the same person who, prior to the commission of said
offense of Murder, had been convicted of the offense of Burglary
of a Building in Cause Number 6025,W86-01-010-CR, in the 218th
District Court of Wilson County, State of Texas, on the 10th day
of April, 1989, and we further find that prior to the commission
of that offense of Burglary of a Building the defendant had been
convicted of the felony offense of Rape in Cause Number 357286 in
the 185th District Court of Harris County, State of Texas, on the
20th day of August, 1984, and we assess his punishment at confine-
ment in the Texas Department of Criminal Justice, Institutional
Division for a term of:

_____ **99 YEARS** _____
(Life Imprisonment, or a term of not over 99 years or less than
25 years)


                    _/s/  Tim Goodman_____
                    Presiding Juror


### SPECIAL ISSUE

Do you find from the evidence beyond a reasonable doubt that
the Defendant, Steven Gregory Sanchez, used a deadly weapon in
committing the Murder for which you have found him guilty.

You will answer "Yes" or "No".

We, the Jury, answer: _____YES_____

IT IS, THEREFORE, CONSIDERED AND ADJUDGED BY THE COURT that
the Defendant, Steven Gregory Sanchez, is guilty of the offense
of Murder as found by the Jury, and that he be punished as a
habitual offender, as found by the Jury, that is by confinement
in the Texas Department of Criminal Justice, Institutional
Division for a period of Ninety-Nine (99) Years, with an affir-
mative finding that a deadly weapon was used in the commission of
this offense, and that the State of Texas do have and recover of
and from said Defendant all costs in this prosecution, for which
execution may issue.  And thereupon, the Defendant, Steven
Gregory Sanchez, was asked by the Court whether he had anything
to say why said sentence should not be pronounced against him,
and he answered nothing in bar thereof.  Whereupon, the Court
proceeded, in the presence of the said Defendant, Steven Gregory
Sanchez, to pronounce sentence against him as follows:

It is the order of the Court that the Defendant, Steven
Gregory Sanchez, who has been adjudged to be guilty of Murder and
whose punishment has been assessed by the Jury, as a habitual
offender, at confinement in the Texas Department of Criminal
Justice, Institutional Division, for a term of Ninety-Nine (99)
Years, with an affirmative finding that a deadly weapon was used
in the commission of this offense, be delivered by the Sheriff of
Cameron County, Texas, immediately to the Director of Corrections
of the Texas Department of Criminal Justice, Institutional
Division, or other person legally authorized to receive such con-
victs, and the said Steven Gregory Sanchez shall be confined in
said Texas Department of Criminal Justice, Institutional
Division, for a term of Ninety-Nine (99) Years, in accordance
with the provisions of the law governing the penitentiaries and

and confinement until sentence was pronounced by the Court. And the said Steven Gregory Sanchez is hereby remanded to jail until said Sheriff can obey the directions of this sentence.

IT IS FURTHER ORDERED by the Court that Defendant's left or right thumb be fingerprinted, and that said thumbprint be marked as Exhibit "A" and is made a part hereof for all purposes.

SIGNED FOR ENTRY: March 23 , 1993.

_____
Judge Presiding

FILED ___ 7 O'CLOCK ___ M
AURORA DE LA GARZA, DIST. CLERK

MAR 2 3 1993

DISTRICT COURT, CAMERON COUNTY, TEXAS
BY _____ DEPUTY

Sanchez #640839 (7)

CAUSE NO. 92-CR-1384-A-1

THE STATE OF TEXAS                    )    IN THE DISTRICT COURT OF

VS                                    :    CAMERON COUNTY, TEXAS

Steven Gregory Sanchez         )    107th JUDICIAL DISTRICT


### FINGERPRINT OF DEFENDANT'S THUMB

The following is the fingerprint of the left or right thumb of:

Steven Gregory Sanchez , Defendant in this cause, convicted of a felony in this Court.



S.G.S.

(Defendant's initials)

Taken on this 22 day of MARCH , 19 93 by:

Roy S. Garcia

(Signature)

107th District Court Bailiff
Title of Person Authorized to
Take Fingerprints


Judgment signed for entry herein the 23 day of March, 19 93.

APPLICANT'S EXHIBIT "B"
(A copy of Motion For New Trial)
(Also, two letters written by Mr. Davidson to Applicant)

CvtoPDF - www.fastio.com

CAUSE NO. 92-CR-1384-A                    /2 \

| THE STATE OF TEXAS | ) | IN THE DISTRICT COURT |
| VS. | : | 107TH JUDICIAL DISTRICT |
| STEVEN GREGORY SANCHEZ | ) | CAMERON COUNTY, TEXAS |

DEFENDANT'S MOTION FOR NEW TRIAL

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW STEVEN GREGORY SANCHEZ, Defendant in the above entitled and numbered cause, by and through his attorney of record and moves the Court to grant him a new trial in the above styled cause for the following reasons:

I.

Because the verdict as to the guilt and punishment of the Defendant is contrary to the law and evidence.

II.

The Court erred in denying Defendant's requested charge that State's witness Adrian "Tony" Verrett was an accomplice witness as a matter of law.

III.

The Court erred in not quashing the jury panel upon Defendant's Motion after one of the members of the jury panel, Dilean Patterson, the wife of a federal prosecutor in Brownsville, Texas, made the unsolicited statement that she was aware the Defendant had been in the penitentiary because she had seen him in federal court.

IV.

The court erred in allowing Rico Garcia to testify concerning the Texas Syndicate, its operation and the

-1-

Defendant's connection with the same, including his record from the Texas Prison System as the Defendant had a constitutional right to be tried upon the accusation contained in the indictment and not as a common criminal. This testimony was a violation of the Motion In Limine granted by the court concerning the disclosure of the Defendant's prior criminal record and his constitutional right to a fair and impartial trial by a fair and impartial jury.

V.

The Court erred in overruling Defendant's Motion for a Mistrial during the testimony of the state's witness, Rico Garcia, when the prosecutor pointed at the Defendant and asked the witness what was the Defendant's connection with the Texas Syndicate, which was a direct comment on Defendant's right to not testify,and violated his right to a fair and impartial trial by a fair and impartial jury.

VI.

The Court erred in the charge on punishment in that prior to the hearing on punishment, the portions of the indictment concerning punishment were not read and the Defendant did not plead to the same and to proceed with the punishment hearing without Defendant's plea of not true was a violation of the Defendant's Constitutional rights to be tried by a fair and impartial jury and the effective assistance of counsel.

-2-

VII.

The Court erred in denying Defendant's Motion To Suppress the search warrant of the 1991 Pontiac Sunbird because the search warrant authorized the search of a place and not a vehicle.

VIII.

Prior to the jury selection, the Defendant filed and the court granted his Motion In Limine concerning his prior criminal record. During the trial, on 5 or 6 different occasions, State's witnesses testified about the Defendant's prior criminal record and though the court granted the Defendant's objection to said testimony and instructed the jury to disregard the same, because of the numerous times Defendant's prior criminal record was brought to the jury's attention, the jurors could not remove this fact from their minds in determining the Defendant's guilt or innocence and thereby denied Defendant the right to a fair and impartial trial by a fair and impartial jury, the effective assistance of counsel, and due process of law.

WHEREFORE, PREMISES CONSIDERED, the Defendant prays that the Court set aside the verdict rendered herein and grant him a new trial, and dismiss the accusation against him.

Respectfully submitted,

JERROLD R. DAIVDSON
37 W. Elizabeth Street
Brownsville, Texas 78520
ATTORNEY FOR DEFENDANT
State Bar No. 05434000

-3-

_120_

## CERTIFICATE OF SERVICE

I, Jerrold R. Davidson, hereby certify that on this the _13th_ day of April, 1993, a true and correct copy of the above and foregoing Motion for New Trial has been mailed by U. S. Mail to the District Attorney's Office, Cameron County Courthouse, Brownsville, Texas 78520.

JERROLD R. DAVIDSON

-4-

/ 29

# O R D E R

On this the _____day of April, 1993, came to be considered Defendant's Motion for a New Trial, and the Court, after considering the same, is of the opinion that the same should be set for the _____day of _____, 1996.

IT IS, THEREFORE, ORDERED AND DECREED that Defendant's Motion For New Trial be and the same is hereby set for hearing on the _____day of _____, 1993 at ____ _____ A.M.

SIGNED FOR ENTRY this the _____day of April, 1993.

_____

JUDGE PRESIDING

/59

# Jerrold R. Davidson
## Attorney at Law
37 W. Elizabeth
Brownsville, Texas 78520

Office 512/541-5201                         Residence 512/546-8948

May 25, 1993

Mr. Steven G. Sanchez
TDCI No. 640839
P.O. Box 100
Huntsville, Texas 77342-0100

Dear Steve:

Received your letter of May 14, 1993 and will try to answer your questions.

The Motion for New Trial has been set for June 3, 1993. Judge Uresti is of the opinion that you do not have to be present for this hearing. I differ with him in this opinion as both the U.S. Constitution and Texas Law say a defendant has the right to be present at all critical stages of proceedings against him. However, this would be moot if Judge Uresti fails to rule or act on the new trial motion within 75 days of filing because the motion would be overruled by operation of law. I will not know until June 3, 1993 what cause of action Judge Uresti will take.

In regards to Christina, it would be necessary for her to contact me if she wants to recant testimony against you. She would have to do this voluntarily and immediately. If she was forced to give false testimony, this in itself would get you a new trial.

In regards the Texas Syndicate, I would need an affidavit from the person who interviewed you.

As for my continuing to represent you, this would be up to Judge Uresti. As I explained to you, if I am appointed you would loose the grounds that I did not properly represent you. I was paid $900.00 for the trial and, of course, this didn't even pay expenses. I will advise Judge Uresti of your position in this matter.

I will be back in touch with you after the hearing, however, I have two attempted murder cases beginning on June 7 and Jun 14, 1993 and it probably will be after I get out of trial.

I will file your notice of appeal on June 3, 1993.

Very truly yours,

# Jerrold R. Davidson
## Attorney at Law
### 37 W. Elizabeth
Brownsville, Texas 78520

Rec: 11-5-93

Office 512/541-5201                              Residence 512/546-8948

November 1, 1993

Mr. Steven Gregory Sanchez
TDCJ-ID #640839
Coffield Unit, H-1-16
Route 1, Box 150
Tennessee Colony, Texas 75884

Dear Steve:

I am writing an addendum to the letter of October 29, 1993, and enclosing a copy of a statement from Arnoldo Garcia, which is self-explanatory.

The other individual in the cell with Arnoldo Garcia at the time Verett was in the cell with them, Joe Gaona, refused to sign any statement and advised me that he was a personal friend of Christina and did not believe a word that Tony Verett said about how he had shot Zapata.

I do not care to go into any of the details in which Verett stated how the killing took place, however, I am concerned about a statement that he did make in which he indicated that Christina was present when Zapata was killed.

May be you could discuss this with your mother and Diana on their next visit and have them give me a call to determine the answer.

Please be further advised that once the Court of Appeals denies your appeal, a post conviction Writ of Habeas Corpus can be filed here with the Trial Court.

As stated in my previous letter, this will all come under my duties and obligations as your court appointed attorney.

The reason it is important to know whether or not Christina was present at the time of Zapata's killing is that she would then become an accomplice witness.

As stated in my previous letter, I will continue to keep you advised as time permits.

Very truly yours,

Jerrold R. Davidson

APPLICANT'S EXHIBIT "A"
(A copy of Judgment and Sentence)

CVisPDF - www.fasisa.com

CAUSE NO. 92-CR-1384-A —1

| | | |
|---|---|---|
| THE STATE OF TEXAS | ) | IN THE DISTRICT COURT OF |
| VS | : | CAMERON COUNTY, TEXAS |
| STEVEN GREGORY SANCHEZ | ) | 107TH JUDICIAL DISTRICT |

## JUDGMENT ON JURY VERDICT OF GUILTY
## PUNISHMENT FIXED BY JURY - NO PROBATION GRANTED

Judge Presiding: Benjamin Euresti, Jr.     Date of Judgment: 3-23-93

Attorney     Migdalia Lopez          Attorney
for State:   Toni Trevino            for Defendant: Jerrold Davidson

Offense
Convicted of: Murder

                                        Date Offense
     Degree: Habitual Offender         Committed: March 11, 1992

Charging
Instrument: Indictment

Plea     : "Not Guilty"

Jury Verdict: "Guilty"               Foreman: Tim Goodman

Plea to Enhancement                  Enhancement
Paragraph(s): /                      Paragraphs: Found True by Jury

Findings on Use     Jury made affirmative finding that defendant used
of Deadly Weapon:   a deadly weapon in the commission of this offense.

Punishment
Assessed by: Jury

Date
Sentence Imposed: March 23, 1993              Costs: $106.50

Punishment and                               Date to
Place of Confinement: 99 YEARS TDCJ-ID       Commence: 3-23-93

                                        Total Amount of
Time Credited: 342 DAYS                 Restitution/Reparation: n/a

Concurrent Unless Otherwise Specified. n/a

BE IT REMEMBERED that on the 15th day of March, 1993, this

cause was called to trial and the State appeared by her Assistant

Criminal District Attorney, and the Defendant, Steven Gregory

Sanchez, appeared in person, his counsel by appointment, the Hon.

Jerrold Davidson also being present, and the Defendant, having

been duly arraigned, pleaded Not Guilty and both parties

announced ready for trial; thereupon a jury of twelve good and

lawful persons, to wit:  Tim Goodman and eleven others, was duly

③

THEREAFTER, on March 16, 1993, the indictment was read to the jury and the Defendant entered his plea of Not Guilty thereto whereupon the State introduced evidence through March 18, 1993 and rested. Defendant's motion for directed verdict denied. Defendant's motion for mistrial denied.  Case was recessed until March 19, 1993.

THEREAFTER, on March 19, 1993, the Defendant introduced evidence whereupon State offered rebuttal evidence.  All parties closed and the jury was sent home until March 22, 1993, whereupon the charge was prepared and submitted to all counsel.

THEREAFTER, on March 22, 1993, the Court charged the jury as to the law applicable to said cause and argument of counsel for the State and the Defendant was duly heard and concluded, and the jury retired in charge of the proper officer to consider their verdict, and after ward was brought into open court by the proper officer, the Defendant and his counsel being present, and in due form of law returned into open court the following verdict, which was received by the Court and is here now entered upon the Minutes of the Court, to wit:

"We, the Jury, find the defendant, Steven Gregory Sanchez, "GUILTY" of Murder as charged in the indictment.

/s/  Tim Goodman
Presiding Juror"

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED by the Court that the Defendant, Steven Gregory Sanchez, is guilty of the offense of Murder as found by the jury, and that said offense was committed on March 11, 1992.

THEREUPON, the Defendant, having previously elected in writing to have his punishment assessed by the same jury, the same jury was duly empaneled to assess said Defendant's punishment in said cause, and the evidence submitted for the St...

THEREAFTER, on March 23, 1993, the Court charged the jury with additional instructions as to the law applicable to punishment of said cause and arguments of State and Defendant were duly heard and concluded and the jury retired in charge of the proper officer to consider their verdict as to Defendant's punishment, and thereafter returned into open court, accompanied by the proper officer, the Defendant and his counsel being present, and in due form of law, the following verdict, which was received by the Court is here now entered upon the Minutes of the Court, to wit:

<u>"FORM 1. - VERDICT AS THIRD OFFENDER</u>

We, the Jury, having found the defendant, Steven Gregory Sanchez, guilty of the offense of Murder, as alleged in the indictment, further find that the allegations in Paragraphs Three and Four of the indictment herein are "True," and that the defendant is the same person who, prior to the commission of said offense of Murder, had been convicted of the offense of Burglary of a Building in Cause Number 6025,W86-01-010-CR, in the 218th District Court of Wilson County, State of Texas, on the 10th day of April, 1989, and we further find that prior to the commission of that offense of Burglary of a Building the defendant had been convicted of the felony offense of Rape in Cause Number 357286 in the 185th District Court of Harris County, State of Texas, on the 20th day of August, 1984, and we assess his punishment at confinement in the Texas Department of Criminal Justice, Institutional Division for a term of:

_____ 99 YEARS _____
(Life Imprisonment, or a term of not over 99 years or less than 25 years)


                                    _/s/   Tim Goodman_____
                                    Presiding Juror


SPECIAL ISSUE

Do you find from the evidence beyond a reasonable doubt that the Defendant, Steven Gregory Sanchez, used a deadly weapon in committing the Murder for which you have found him guilty.

You will answer "Yes" or "No".

We, the Jury, answer: ____YES_____

IT IS, THEREFORE, CONSIDERED AND ADJUDGED BY THE COURT that the Defendant, Steven Gregory Sanchez, is guilty of the offense of Murder as found by the Jury, and that he be punished as a habitual offender, as found by the Jury, that is by confinement in the Texas Department of Criminal Justice, Institutional Division for a period of Ninety-Nine (99) Years, with an affirmative finding that a deadly weapon was used in the commission of this offense, and that the State of Texas do have and recover of and from said Defendant all costs in this prosecution, for which execution may issue. And thereupon, the Defendant, Steven Gregory Sanchez, was asked by the Court whether he had anything to say why said sentence should not be pronounced against him, and he answered nothing in bar thereof. Whereupon, the Court proceeded, in the presence of the said Defendant, Steven Gregory Sanchez, to pronounce sentence against him as follows:

It is the order of the Court that the Defendant, Steven Gregory Sanchez, who has been adjudged to be guilty of Murder and whose punishment has been assessed by the Jury, as a habitual offender, at confinement in the Texas Department of Criminal Justice, Institutional Division, for a term of Ninety-Nine (99) Years, with an affirmative finding that a deadly weapon was used in the commission of this offense, be delivered by the Sheriff of Cameron County, Texas, immediately to the Director of Corrections of the Texas Department of Criminal Justice, Institutional Division, or other person legally authorized to receive such convicts, and the said Steven Gregory Sanchez shall be confined in said Texas Department of Criminal Justice, Institutional Division, for a term of Ninety-Nine (99) Years, in accordance with the provisions of the law governing the penitentiaries and

and confinement until sentence was pronounced by the Court. And the said Steven Gregory Sanchez is hereby remanded to jail until said Sheriff can obey the directions of this sentence.

IT IS FURTHER ORDERED by the Court that Defendant's left or right thumb be fingerprinted, and that said thumbprint be marked as Exhibit "A" and is made a part hereof for all purposes.

SIGNED FOR ENTRY: March 23, 1993.

_____
Judge Presiding

FILED _____ O'CLOCK _____ M
AURORA DE LA GARZA, DIST. CLERK

MAR 2 3 1993

DISTRICT COURT, CAMERON COUNTY, TEXAS
BY _____ DEPUTY

CAUSE NO. _92-CR-1384-A-1_

Sanchez #640839 ①

| | | |
|---|---|---|
| THE STATE OF TEXAS | ) | IN THE DISTRICT COURT OF |
| VS | : | CAMERON COUNTY, TEXAS |
| _Steven Gregory Sanchez_ | ) | _107th_ JUDICIAL DISTRICT |

## FINGERPRINT OF DEFENDANT'S THUMB

The following is the fingerprint of the ~~left~~ or right thumb of:

_Steven Gregory Sanchez_ , Defendant in this cause, convicted of a felony in this Court.



S.G.S.
(Defendant's initials)

Taken on this _22_ day of _MARCH_ , 19_93_ by:

_Roy S Garcia_
(Signature)

_107th District Court Bailiff_
Title of Person Authorized to
Take Fingerprints

Judgment signed for entry herein the _23_ day of _March_, 19_93_.

APPLICANT'S EXHIBIT "C"
(A copy of Indictment)

CVIsPDF - www.fastio.com

MURDER [19.02a1.          FIRST indictment          #7
                                            (murder)

# IN THE NAME AND BY THE AUTHORITY OF THE STATE OF TEXAS

THE GRAND JURORS, for the County of Cameron, State aforesaid, duly organized as such at the      JULY

Term, A. D. 19 92 , of the      107TH JUDICIAL DISTRICT                    in and for

said County, upon their oaths in said Court, present that      STEVEN GREGORY SANCHEZ
                                                               A/K/A "STEVE EL LOCO",
                                                               SANTOS ADAMES
                                                               AND MIGUEL HERNANDEZ GARCIA

hereinafter called Defendants,

on or about the      11TH          ,day of          MARCH          A. D One Thousand Nine

Hundred and      NINETY-TWO          and anterior to the presentment of this indictment, in the County of

Cameron and State of Texas, did then and there unlawfully    ,  intentionally   and   knowingly

cause the death of PEDRO ZAPATA, JR., by shooting PEDRO ZAPATA, JR.

with a firearm,

AND THE GRAND JURORS aforesaid, upon their oaths in said court,
present that the Defendants, on or about the 11th day of March, 1992
and anterior to the presentment of this Indictment, in the County of
Cameron and State of Texas, did then and there unlawfully, with the
intent to cause serious bodily injury to PEDRO ZAPATA, JR., commit an
act clearly dangerous to human life that caused the death of PEDRO
ZAPATA, JR., said act being: shooting PEDRO ZAPATA, JR. with a firearm,

AND THE GRAND JURORS DO FURTHER present that before the commission
of the offense now charged above, to wit, on the 20th day of August,
1984, in Cause Number 357286 in the 185TH District Court of Harris
County, State of Texas, STEVEN GREGORY SANCHEZ A/K/A "STEVE EL LOCO",
under the name STEVEN GREGORY SANCHEZ, was duly and legally convicted
of the felony offense of RAPE,

And that before the commission of the offense now charged above
and after the previously mentioned conviction in Cause Number 357286
was final, STEVEN GREGORY SANCHEZ A/K/A "STEVE EL LOCO", committed the
felony offense of BURGLARY OF A BUILDING, and was convicted of such
offense under the name of STEVE SANCHEZ, on the 10TH day of

was convicted of such offense under the name of **STEVE SANCHEZ**, on the 4th day of November, 1991, in Cause Number 13,063-CR, in the 349TH District Court of Houston County, State of Texas,

AND THE GRAND JURORS DO FURTHER present that before the commission of the offense now charged above, to wit, on the 16TH day of **AUGUST**, 1976, in Cause Number 76-B-304 in the **United States District Court for** the Southern District of Texas, SANTOS ADAMES, under the name SANTOS ADAMES, was duly and legally convicted of the felony offense of **POSSESSION WITH INTENT TO DISTRIBUTE HEROIN**,

Case 1:00-cv-00117    Document 1    Filed in TXSD on 07/18/2000    Page 118 of 159

**APPLICANT'S EXHIBIT "D"**
(Copies of Motions For New Trial & Affidavits)
(Also, a letter to Judge Euresti from Arnoldo Garcia)

Created by www.fastio.com.

# Jerrold R. Davidson
## Attorney at Law
37 W. Elizabeth
Brownsville, Texas 78520

*Rec: 11-27-93*

Office 512/541-5201

Residence 512/546-8948

November 19, 1993

Cathy Wilborn, Clerk
Court of Appeals
Thirteenth Supreme Judicial District
Tenth Floor
Nueces County Courthouse
Corpus Christi, Texas 78401

RE: No. 13-93-350-CR
Steven Gregory Sanchez vs.
State of Texas

Dear Ms. Wilborn:

Enclosed for filing please find Appellant's Motion For
New Trial and Order, for the Court's consideration.

Very truly yours,

Jerrold R. Davidson

JRD/afg
Encls.
xc: W/Encl. Luis Saenz
Cameron County District Attorney
Cameron County Courthouse
Brownsville, Texas 78520

Rec· 11-27-93

# COURT OF APPEALS

## THIRTEENTH SUPREME JUDICIAL DISTRICT

## CORPUS CHRISTI, TEXAS

STEVEN GREGORY SANCHEZ   )

     VS.              :   CAUSE NO. 13-93-350-CR

THE STATE OF TEXAS     )


## MOTION FOR LEAVE TO FILE APPELLANT'S

## MOTION FOR NEW TRIAL

TO THE HONORABLE JUDGES OF SAID COURT:

    COMES NOW, STEVEN GREGORY SANCHEZ, by and through his attorney, JERROLD R. DAVIDSON, and files this, his Motion for Leave To File Defendant's Motion for New Trial, and as grounds therefore would show unto the Court the following:

I.

    New evidence of Appellant's inocence as set out in the statement attached to Appellant's Motion For New Trial.

    WHEREFORE, PREMISES CONSIDERED, Appellant prays that his Motion For Leave to File Defendant's Motion for New Trial be granted and for such further relief to which he is entitled.

                       Respectfully submitted,

                       JERROLD R. DAVIDSON
                       37 W. Elizabeth Street
                       Brownsville, Texas 78520
                       Tel.210 541-5201
                       ATTORNEY FOR APPELLANT
                       State Bar No. 05434000

*Rec*
*11-27-93*

COURT OF APPEALS

THIRTEENTH SUPREME JUDICIAL DISTRICT

CORPUS CHRISTI, TEXAS

STEVEN GREGORY SANCHEZ            )

                                  :

VS.                               )    NO. 13-93-350CR

THE STATE OF TEXAS                :

<u>APPELLANT'S MOTION FOR NEW TRIAL</u>

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW STEVEN GREGORY SANCHEZ, Appellant in the above entitled and numbered cause, by and through his attorney of record and moves the Court to grant him a new trial in the above styled cause for the following reasons:

I.

Although the defense exercised diligence in the process of investigating and discovering the nature of the facts in this case, new evidence of which the defense had no previous notice has come to light, to-wit:

On or about October 29, 1993, Jerrold R. Davidson, attorney for STEVEN GREGORY SANCHEZ, received information through Mrs. Arnoldo Garcia and Chester Gonzalez, an attorney that Arnoldo Garcia had information concerning the testimony of one Antonio "Tony" Verrett. Tony Verrett was the main prosecution witness in Cause No. 92-CR-1384-A styled State of Texas vs. Steven Gregory Sanchez in which

Page 1

Steven Gregory Sanchez was convicted of killing Pedro Zapata.

Upon contacting Arnold Garcia at the Cameron County Detention Center, I was advised that Tony Verrett had been placed in the cell with Arnoldo Garcia and another inmate by the name Jose Gaona on or about October 17, 1993. Jose Gaona and Tony Verrett knew each other. Tony Verrett did not recognize Arnoldo Garcia as being the investigator appointed by the court for Steven Gregory Sanchez.

During a conversation in the cell, Tony Verrett bragged about how he had shot and killed Pedro Zapata over a dope deal and placed the blame on Steven Gregory Sanchez.

Tony Verrett further stated he had worked a deal with the authorities to testify against Steven Gregory Sanchez to escape prosecution.

Arnoldo Garcia has executed a statement to the effect of part of what Tony Verrett bragged about and is attached hereto and marked as Exhibit "A". The Statement is not notarized because no notary was available, however, he will testify to the contents of what Tony Verrett told him and Jose Gaona.

Jose Gaona would not sign a statement because he knows Tony Verrett and Christina Ontiveros and considers them friends, however, he did indicate to the undersigned attorney that Christina Ontiveros may have been present when Pedro Zapata was killed.

Steven Gregory Sanchez is presently incarcerated and

unavailable to swear to the contents of this Motion.

WHEREFORE, PREMISES CONSIDERED, the Appellant prays that the Court set aside the verdict rendered herein and grant him a new trial.

Respectfully submitted,

JERROLD R. DAIVDSON
37 W. Elizabeth Street
Brownsville, Texas 78520
ATTORNEY FOR Appellant
State Bar No. 05434000

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing Appellant's Motion for New Trial was mailed to the office of Luis Saenz, District Attorney, Cameron County Courthouse, Brownsville, Texas, on this the 19th day of November, 1993.

JERROLD R. DAVIDSON .

Page 3

COURT OF APPEALS

THIRTEENTH SUPREME JUDICIAL DISTRICT

CORPUS CHRISTI DIVISION

STEVEN GREGORY SANCHEZ      )

                              :

VS.                     )   CAUSE NO. 13-93-350-CR

THE STATE OF TEXAS         :

 O R D E R

On this the _____day of November, 1993, came to be considered Appellant's Motion For Leave To File Appellant's Motion For New Trial, and the Court, after considering the same, is of the opinion that the same should be _____ _____.

IT IS, THEREFORE, ORDERED AND DECREED that Appellant's Motion For Leave To File Appellant's Motion For New Trial, be and the same is hereby _____.

SIGNED FOR ENTRY this the _____day of November, 1993.

_____

JUDGE PRESIDING

Case 1:00-cv-00117   Document 1   Filed in TXSD on 07/18/2000   Page 126 of 159

October 7, 1994

133



RECEIVED
OCT 12 1994
107th DISTRICT COURT

Honorable Ben Euresti
107th District Court Judge
Brownsville, Texas   78520

Dear Judge Euresti:

I hope this letter does not get thrown in the trash because it took great courage and respect to tell what I heard.  I'm writing it.

I have known you for many years and I think you have known me.  I have always greeted you, voted for you and worked for the people of our community in any way that I could.  You may have known my father, the late Matias D. Garcia, he was working for Senator Eddie Lucio at the time of his death.  I am married to Patricia Longoria, eldest daughter of now retired Justice of the Peace, Leo Longoria. You also know my uncle, Sheriff Alex Perez.  I do not mention these people as "name droppers", but only to show you where I come from.

I was a former Texas Dept. of Public Safety Trooper and after leaving the State started investigating for many different attorneys in the valley.  Neal Bonner, Curtis Bonner, Horacio Barrera,  Tom Lockhart, Alfred Denham, Ed Mann, to name a few.  I also did allot of defense insurance workman's compensation claim work.  I have testified in several types of cases and based on my testimony people have either gone to prison, lost their lives or lost all of their benefits because I knew and testified to the their worker's compensation fraud.

I have even testified in your court and felt that I was testifying to the truth as I knew it; period.  No adding or deleting.  My honesty and veracity had never been questioned by the State in any way, until...I was convicted of a crime that I did not commit.  I am appealing that conviction and pray that somehow I can clear the record.  Yes, I pled guilty to a theft, but you would too if you were threatened with a stacked sentence if you didn't.  This is not your concern, but my testifying in a hearing in your court very soon is.

While at the Detention Center, I did hear what has been submitted to you as my affidavit.  Out of a sense of loyalty to the court, a duty to my profession and respect to what I felt was right, I told Mr. Davidson what I heard.  He did what he thought was right and here we are.

I have asked the State to consider that I can not only place Mr. Sanchez at the scene, but also place another individual there as the trigger man.  They have been protecting this other man from countless other crimes, because to protect his own skin he agreed to testify against Mr. Sanchez, and the State agreed not to prosecute him.  But by his own admission and in front of another

Case 1:00-cv-00117   Document 1   Filed in TXSD on 07/18/2000   Page 127 of 159

guy, Jose Gaona, he told of how he misled the State and how he committed the murder himself.

Jose Gaona was Christina Ontiveros' former lover and is afraid to get involved for reasons only he knows. The individual the State is protecting, and Christina, have known each other for a long time. There is much more, but since I'm not to be believed (because of my convictions) it seems pointless to say anymore.

Because of who Steven Sanchez represents and because I too am in prison awaiting parole or exoneration, whichever comes first, I do not wish to testify in any way. I fear for my safety and that of my family. I have two small children, a wife and other family members that I must consider. I am scared Judge, for myself and for my family. If I am out of prison myself and can be here to protect them, I may reconsider, but for now I can no longer continue. Please understand.

Sincerely,

Arnoldo R. García

cc: Horacio Barrera

STATE OF TEXAS          )

COUNTY OF CAMERON      )

BEFORE ME, the undersigned authority, a Notary Public in and for said County and State, on this day personally appeared   ARNOLDO GARCIA  , who, being by me duly sworn, deposed as follows:

"My name is   ARNOLDO GARCIA   .   I am presently incarcerated in the Cameron County Detention Center located in Brownsville, Texas.

On or about October 17, 1993, an individual whom I know to be Tony Verett was placed in the cell with me and Jose Elias Gaona.  I know Tony Verett because I investigated a murder case in which he was the principal witness against Steven Gregory Sanchez, who was accused of killing Pedro Zapata.

After Tony Verett was placed in our cell, I was made aware that he and Jose Elias Gaona had known each other for sometime.  Tony Verett did not recognize me.

Tony Verett had been in the cell for about a week when he began talking about the Zapata killing.

He bragged to myself and Joe Gaona that he, and not Steven Sanchez, had been the one who shot Zapata.  He described in detail how he did the shooting. He said he killed Zapata because of a dope deal gone bad."

Further Affiant says not.

ARNOLDO GARCIA

SWORN TO AND SUBSCRIBED BEFORE ME on this the ___ day of

Exhibit "A"

_December_ , 1993.

_Alicia F. Garcia_
ALICIA F. GARCIA
Notary Public in and for
Cameron County, Texas
My Commission Expires:
   September 30, 1996



# CAMERON COUNTY DISTRICT ATTORNEY

CAMERON COUNTY COURTHOUSE
974 E. HARRISON ST., 2ND FLOOR ---BROWNSVILLE, TEXAS 78520
956.544.0849                    956.544.0869:Fax

YOLANDA DE LEON
Cameron County
(Criminal District) Attorney

10 March
~~16 February~~ 2000

FILED _____ O'CLOCK _____ M
AURORA DE LA GARZA DIST. CLERK

**MAR 10 2000**

DISTRICT COURT OF CAMERON COUNTY, TEXAS
_____ DEPUTY

Hon. Benjamin Euresti, Jr.
107th Judicial District
Brownsville  TX.   78520

RE:   Cause No. 92-CR-1384-A
      State v. Steven Gregory Sanchez

Dear Judge Euresti:

Attached you will find a proposed order to the above-referenced inmate's application for writ of *habeas corpus*, which we submit for filing.

By copy of this letter, I am notifying the inmate of this submission.   Thanking you for your time and attention, I remain

Yours Truly,

JOHN A. OLSON
Assistant County
(Criminal District) Attorney

C: File
   Steven Gregory Sanchez
   TDCJ-ID # 640839
   Estelle Unit
   Huntsville TX.  77320

Attachment

CAUSE NO. 92-CR-1384-A

| | | |
|---|---|---|
| STATE OF TEXAS | ][ | IN THE DISTRICT COURT |
| v. | ][ | ·107TH JUDICIAL DISTRICT |
| STEVEN GREGORY SANCHEZ,<br>Applicant | ][<br>][ | CAMERON COUNTY, TEXAS |

ORDER ON APPLICANT'S SECOND
APPLICATION FOR WRIT OF *HABEAS CORPUS*

Today, after considering Applicant Steven Gregory Sanchez's second Application

for writ of *habeas corpus*; his trial record; his direct appeal (a copy of which is attached

hereto); his *pro se* petition for discretionary review, **Sanchez v. State**, No. 1385-99; and

the State's proposed order to his second Application, this Court finds and concludes that

said Application should be denied on these grounds:

1.    **Tex. Code Crim.  Proc.  Art. 11.04** provides that "Every provision relating to the

writ of *habeas corpus* shall be most favorably construed in order to give effect to the

remedy, and protect the rights of the person seeking relief under it." However, an

application for writ of *habeas corpus* is not to be used as a substitute for appeal. **Ex parte**

**Hopkins,** 610 S.W.2d 479, 480 (Tex.  Crim.  App. 1980, *en banc).*  Its purpose is "only to

review jurisdictional defects or denials of fundamental or constitutional rights." **Ex parte**

**Tovar,** 901 S.W.2d 484, 485 (Tex.  Crim.  App. 1995, *en banc*); **Ex parte Goodman**, 816

S.W.2d 383, 385 (Tex. Crim. App. 1991, *en banc*).

Additionally, **Tex. Code Crim.  Proc.  Art. 11.15, Sec. 5** requires that an application

contain sworn allegations of fact, **Ex parte Emmons,** 660 S.W.2d 106, 107 (Tex.  Crim.

App. 1983), and it is an applicant's burden of proof to sustain his allegation of unlawful

1

restraint by a preponderance of the evidence. **Ex parte Lafon**, 977 S.W.2d 865, 867 (Tex. App. --Dallas 1998, no pet.). That is, he must allege and prove that an error existed, and that it did in fact contribute to his conviction or punishment. **Ex parte Barber,** 879 S.W.2d 889, 891-92 (Tex. Crim. App. 1994, *en banc*). Finally, there are issues which an applicant may not collaterally attack ; *e.g.*, evidence sufficiency. **Ex parte Williams,** 703 S.W.2d 674, 678 (Tex. Crim. App. 1986); **Ex Parte Smith,** 571 S.W.2d 22, 23 (Tex. Crim. App. 1978) In this latter regard, the Court noticed Applicant's Ground 10, at P. ii.

2.      Grounds 1-12 cannot be sustained. As noted, a writ's purpose is only to determine the lawfulness of confinement; it is not a substitute for appeal. **Ex Parte McGowen**, 645 S.W.2d 286, 288 (Tex. Crim. App.1983); **State v. Young**, 791 S.W.2d 176, 177 (Tex. App.-- Hous. [1st Dist.] 1990), aff'd, 810 S.W.2d 221 (Tex. Crim. App. 1991). Generally, claims that could have been raised on direct appeal are not cognizable in a post-conviction application. See **Ex parte Gardner,** 959 S.W.2d 189, 199 (Tex. Crim. App.1998)(op. on reh'g); **Ex parte Goodman**, 816 S.W.2d at 385; See **Ex parte McLain**, 869 S.W.2d 349, 350 (Tex. Crim. App. 1994, *en banc*)[in a collateral attack, an applicant is procedurally barred, or has defaulted, from raising issues through his failure to have raised them on direct appeal] and **Ex parte Groves**, 571 S.W.2d 888, 890 (Tex. Crim. App.1978) and **Ex parte Benavides**, 801 S.W.2d 535, 537 (Tex. App.--Hous. [1st Dist.] 1990, pet. dism'd): neither a trial court nor an appellate court, either in the exercise of original or appellate jurisdiction, may entertain an application for writ of *habeas corpus* where there is an adequate remedy at law.  A review of Applicant's direct appeal and *pro se* petitions supports a finding of procedural bar, and Applicant did not explain why these Grounds

2

were not previously-raised therein.

3.      Applicant's final Ground, wherein he alleges cumulative ineffective assistance of counsel claims, also cannot be sustained. This Court prefaces its responses with these observations.

4.      Applicant's trial counsel and appellate counsel was Jerrold Davidson. This Court notes that Davidson had been practicing criminal defense law in State and federal courts in Cameron County, Texas for many years prior to undertaking Applicant's defense. Since Davidson is now deceased, an affidavit from him in response to Applicant's allegations is impossible.

5.      Clearly, constitutional and statutory rights to counsel, **U.S. Const. Amend. VI; Tex. Const. art. 1, §10; Tex. Code Crim. Proc. art. 1.051(a)**, mean the right to effective assistance of counsel at the trial level, **Strickland v. Washington,** 466 U.S. 668, 686; 104 S. Ct. 2052, 80 L. Ed.2d 674 (1984), regardless of whether counsel is appointed or retained. **Roberts v. State,** 705 S.W.2d 803, 805 (Tex. Crim. App. 1986). The test for determining whether an accused has suffered a deprivation of his right to effective assistance of counsel was articulated in **Strickland**: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result was unreliable. Unless a defendant makes both showings, it cannot be said that the conviction .... resulted from a breakdown in the adversary process

3

that renders the result unreliable." *Id.*, at 687.

Prejudice is demonstrated when the applicant shows "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." **Strickland,** 466 U.S. at 694. A reasonable probability is one sufficient to undermine confidence in the outcome. **Jackson v. State**, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994); **Miniel v. State,** 831 S.W.2d 310, 323 (Tex. Crim. App. 1992); **Simms v. State,** 848 S.W.2d 754, 756 (Tex. App. -- Hous. [1st Dist.] 1993, pet. ref'd). A reviewing court indulges in a strong presumption that defense counsel's conduct falls within the wide range of reasonable, professional assistance. **Valencia v. State**, 946 S.W.2d 81, 83 (Tex. Crim. App. 1997); *i.e.*, that the challenged action might be considered sound trial strategy. **Jackson,** 877 S.W.2d at 771. To prevail, an applicant bears the burden to prove ineffective assistance of counsel by a preponderance of the evidence. **Patrick v. State,** 906 S.W.2d 481, 495 (Tex. Crim. App. 1995, *en banc*); **Ex parte Thomas,** 906 S.W.2d 22, 24 (Tex. Crim. App. 1995); **Moore v. State,** 694 S.W.2d 528, 531 (Tex. Crim. App. 1985); **Gamble v. State,** 916 S.W.2d 92, 93 (Tex. App.--Hous. [1st Dist.] 1996, no pet.); **Ybarra v. State,** 890 S.W.2d 98, 112 (Tex. App. —San Antonio 1994, pet. refd). That is, he must prove by a preponderance of the evidence that counsel's action fell below the reasonably expected level of professional conduct, and that, but for said action, he would not have been found guilty. Accord **Barber**, 879 S.W.2d at 891-92; **Ex parte Kunkle,** 852 S.W.2d 499, 505 (Tex. Crim. App. 1993, *en banc*).

Ineffective assistance of counsel cannot be established by separating out one portion of a trial counsel's performance for examination. **King v. State**, 649 S.W.2d 42, 44

4

(Tex. Crim. App. 1983). A record must firmly support a claim of ineffective assistance. **Jackson**, 877 S.W.2d at 771; **Ex parte Cruz**, 739 S.W.2d 53, 59 (Tex. Crim. App. 1987); **Johnson v. State**, 691 S.W.2d 619, 627 (Tex. Crim. App. 1984); **Johnson v. State**, 614 S.W.2d 148, 151 (Tex. Crim. App.1981). An applicant must not only specifically identify the deficiencies in counsel's performance, but must also identify the specific action that should have been made, and provide authority in support of his argument that the action would have been meritorious. **Valdes-Fuerte v. State**, 892 S.W.2d 103, 112 (Tex. App. -- San Antonio 1997, no pet.). A reviewing court will not substitute speculation for a properly developed record supported by legal authority. **Jackson**, 877 S.W.2d at 771; **Runnels v. State**, 860 S.W.2d 545, 547 (Tex. App.--Beaumont 1993, pet. ref'd.); see, e.g., **Lyon v. State**, 885 S.W.2d 506, 520 (Tex. App. -- El Paso 1994, pet. ref'd): a reviewing court will not "second-guess" an attorney's trial decisions.

Texas has applied **Strickland's** standard at the guilt-innocence phase of trial. **Hernandez v. State**, 988 S.W.2d 770, 772 (Tex. Crim. App. 1999, en banc), and the State's right is no more protective than its federal counterpart. Id.

6. This Court again notices that Applicant failed to raise the ineffective assistance issues in his pro se petition he now proffers. **Sanchez v. State**, No. 1385-99. Since he failed to do so, Applicant waived any right to bring them in a habeas proceeding. Accord **Ex parte Gardner**, **Ex parte Goodman**, and **Ex parte McLain**, supra.

7. Alternatively, while it is true that trial counsel has a duty to independently investigate the facts of a case, App., at 79-80, this Court is also aware that such a duty is not absolute. **McFarland v. State**, 928 S.W.2d 482, 501 (Tex. Crim. App. 1996). Rather, counsel must

5

either make a reasonable investigation or make a reasonable decision that makes particular investigations unnecessary. *Id.* A reviewing court can reverse a conviction for failure to investigate if a record shows that, as a consequence of counsel's failure, an accused's only viable defense was not raised, and a reasonable probability exists that, but for counsel's failure to have raised it, the result of the proceeding would have been different. *Id.*; Accord **Ex parte Cruz**, 739 S.W.2d 53, 59 (Tex. Crim. App. 1987).

The record shows that only Tony Verrett claimed to have been an eye witness to Applicant's murder of Pedro Zapata's murder; Applicant did not testify. The record also shows that Davidson repeatedly urged the jury to find that it was Verrett who was Zapata's murderer; therefore, the issue was that of credibility. Applicant's argument fails to show what more Davidson could have done.

Not only did Applicant fail to prove by a preponderance of the evidence that Davidson failed to adequately conduct an investigation into the State's charge; he failed to articulate what "more merits" there was to his defense that Davidson should have presented. See *App.*, at 82.

8.    As to the other allegations, Applicant failed to prove by a preponderance of the evidence that:

A)    An objection to the photographs would have been sustained. That is, it is well-settled that if, a witness can properly testify about an object or event /1/, *infra*, a photograph of that object or event is generally admissible. **Emery v. State**, 881 S.W.2d 702, 710 (Tex. Crim. App. 1994), *cert.* denied, 513 U.S. 1192, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995); **Williams v. State**, 773 S.W.2d 525, 539 (Tex. Crim. App.1988); **Burdine v. State**, 719

6

S.W.2d 309, 316 (Tex. Crim. App.1986). "Only where the probative value of the photograph is small, and the inflammatory potential great, will it be an abuse of discretion to admit the photograph." **Williams**, 773 S.W.2d at 539.

Given the fact that Applicant's only defense was that Verrett committed the charged offense the admission of photographs of a weapon that Verrett claimed looked like the murder weapon was not reversible error; Verrett's credibility was for the jury to decide.

B)    An appellate review of Davidson's comment, *App.*, at 83, would have resulted in a reversal for a new trial or acquittal; and

C)    Given the cold-blooded nature of the offense itself, Slip Op., at 2, a jury would not have sentenced him to life had the State not referenced the Exhibits he now challenges. *App.*, at 83; Compare **Barajas v. State**, 732 S.W.2d 727 (Tex. App. -- Corpus Christi 1987, no pet.)[life sentence, no enhancements].

8.    This Court has also compared Applicant's trial record with that of **Butler v. State**, 716 S.W.2d 48 (Tex. Crim. App. 1986), wherein the record showed that counsel's failure to investigate was not the result of reasonably professional judgment and resulted in (1) his being unaware of or incorrect about key evidence regarding Butler's defense and (2) counsel's failure to present substantial evidence that could have established that *defense. Id.*, at 55-56. In **Jordan v. State**, 883 S.W.2d 664 (Tex. Crim. App. 1994, *en banc*),

---

/1/ The Court of Appeals held that that portion of Munoz's photograph testimony to which Applicant objected was not harmful error. Slip Op., at 6-7. However, the photograph in question was State Exhibit 45; Applicant has never before challenged Munoz's testimony respecting State Exhibits 50 & 51 much less the State's offer thereof.

appellant alleged that he received ineffective assistance from his attorney claiming in part that his counsel failed to properly investigate the facts and failed to subpoena two witnesses who might have provided exculpatory evidence. While holding those matters were not determinable from the record, the Court of Criminal Appeals nonetheless held that Jordan's motion for new trial was insufficient because it was merely conclusory. *Id.*, at 665.

Applicant has simply failed to prove by a preponderance of the evidence that both of Strickland's prongs have been implicated at either his guilt-innocence or punishment phases. **Hernandez v. State**, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986, *en banc*). Therefore, an evidentiary hearing is unnecessary.

10.    Applicant has otherwise failed to prove by a preponderance of the evidence that any controverted, previously unresolved factual issue material to the legality of his confinement otherwise exists. **Tex. Code Crim. Proc. 11.07, §3(c); Ex parte Dutchover**, 779 S.W.2d 76, 78 (Tex. Crim. App. 1989, *en banc*).    Therefore, his application for writ of *habeas corpus* is ordered DENIED.

The Clerk of this Court is now directed to prepare a Transcript of all instruments relevant to this Application, and transmit the same to the Clerk of the Court of Criminal Appeals as soon as possible.

Signed for entry on February _____ 2000.

_____
HON. BENJAMIN EURESTI, JR.
107th Judicial District Court
Judge Presiding

8

C:    John A. Olson                    Steven Gregory Sanchez
      A.D.A.                           TDCJ-ID # 640839
                                       Estelle Unit
                                       Huntsville TX.        77320


Attachment

9



NUMBER 13-93-350-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI

STEVEN GREGORY SANCHEZ
A/K/A "STEVE EL LOCO,"                                          Appellant,

v.

THE STATE OF TEXAS,                                               Appellee.

On appeal from the 107th District Court of Cameron County, Texas.

# O P I N I O N

Before Chief Justice Seerden and Justices Dorsey and Hinojosa
Opinion by Justice Hinojosa

A jury found appellant, Steven Gregory Sanchez a/k/a "Steve El Loco," guilty of murder and sentenced him to 99 years' confinement. By two points of error, appellant contends that the trial court erred by failing to grant a mistrial because of

On March 15, 1993, the trial court granted appellant's motion in limine ordering the State not to present to the jury any information concerning appellant's prior felony convictions or the time he served incarcerated. Appellant complains that the State persistently disregarded the trial court's ruling and elicited such information from various witnesses, thus prejudicing the jury. Appellant contends that he objected each time this type of testimony was presented, that he sought an instruction to the jury to disregard, and that he moved for a mistrial. Appellant claims that the trial court sustained each objection, instructed the jury to disregard the offensive statement, but denied his motion for mistrial.

It is an established principal that a defendant is not to be tried for collateral crimes or for generally being a criminal. *Nobles v. State*, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992). It is critically important that an accused be convicted only by the evidence presented and not by a prosecutor's attempt to inflame or prejudice the minds of the jurors. *Stein v. State*, 492 S.W.2d 548, 551 (Tex. Crim. App. 1973). However, inadvertent references to prior incarceration can be cured of prejudicial effect. *Id.*; *Tennard v. State*, 802 S.W.2d 678, 685 (Tex. Crim. App. 1990), *cert. denied*, 501 U.S. 1259 (1991). An instruction by the trial court to the jury to disregard is sufficient to cure prosecutorial misconduct. *Nobles*, 843 S.W.2d at 514; *Tennard*, 802 S.W.2d at 685; *Willams v. State*, 643 S.W.2d 136, 138 (Tex. Crim. App. 1982); *Lopez v. State*, 643 S.W.2d 436, 437 (Tex. App.--Corpus Christi 1982, pet. ref'd). However, a sustained objection and instruction to disregard are insufficient to cure or render harmless prosecutorial conduct that is 1) clearly

**3**

Briefly stated, the question we must answer is whether the error might possibly have prejudiced the juror's process of deciding the case. *Id.* at 587-88.

Although appellant contends that on nine separate occasions the State's witnesses referred to Sanchez's criminal record, his time in the penitentiary, and that he was on parole, appellant's brief cites only six such instances. Appellant cites the following testimony from Detective Sergeant Ofelio Muñiz of the Harlingen Police Department as objectionable:

| | |
|---|---|
| Prosecutor: | Now, based on this information that you received, did you obtain a picture of this individual? |
| Muñiz: | Yes, I did. |
| Prosecutor: | And who gave you that picture? |
| Muñiz: | There were two pictures given to me. One was the mother of the eyewitness that produced this picture when she came over to talk to me. The second picture was obtained from the parole officer. |
| Defense Attorney: | Well, Your Honor, I'm going to object to this. This is violative of the rulings of this court on the motion in limine, and I'm going to move for a mistrial at this time. First, I ask that the court sustain my objection that this violates the ruling of this court in regard to the motions that I have filed. The State was ordered to advise their witnesses to the extent of the motion in limine, and I ask that the court instruct this jury at this time to disregard the statement by this officer. |
| Court: | All right. I'll sustain the objection and ask the jury to disregard the last statement made by this witness. |
| Defense Attorney: | Your, Honor, now I'll move for a mistrial. I don't think any instruction that this court can now give this jury can remove from their minds this *unsolicited* testimony by this officer. He's an experienced |

5

| | |
|---|---|
| Defense Attorney: | Can we have her and her witness instructed to please abide by the court's rulings that were previously made in this trial? |
| Court: | All right. Counsel is aware of the motions that have been filed in this court. Let's proceed. |
| Defense Attorney: | Your Honor, for the record, you've now instructed this jury, and, because of procedural things, I have to make the same motion for a mistrial because this jury cannot, once but twice, remove it from their minds about the statements made by this officer, and it would be impossible for them now to remove whatever cloud appears in their minds or in the back of their minds. It's impossible for a human being to set aside that type of testimony, and again we ask for a mistrial. |
| Court: | I'll deny that motion. |

While the State's remarks at this point are questionable, no specific reference was made to the appellant's criminal record, parole, or prison time. The trial court sustained appellant's objection before such comments were elicited from the witness. The character of the remarks at issue do not suggest the impossibility of withdrawing any negative impression produced on the jurors' minds. *See Cavender*, 547 S.W.2d at 603; *Lopez*, 643 S.W.2d at 437.

The next instance cited by appellant follows:

| | |
|---|---|
| Prosecutor: | Were you able to determine whether the defendant was a member of the Texas Syndicate? |
| Defense Attorney: | My goodness, Your Honor! You just ruled on it at the bench, and there's been no possible predicate laid for that type of question and the answer, and I object to it? |
| Court: | I'll sustain that at this time. |

7

Defense Attorney: Your Honor, I'm going to object. It goes into matters we've already gone into. The court has instructed the State to caution their witnesses. It violates the motion in limine that the court ruled on. This is the third time, and I ask the court to sustain my objection and instruct the jury to disregard the last statement by the witness.

Court: All right. I'll sustain the objection of counsel and instruct the jury to disregard the last remark, and you're not to take that into consideration.

Defense Attorney: And at this time I again will move for a mistrial, Your Honor, on the same basis, that this is the third time that a witness has come out with testimony that the court has advised the State, not only under my motion in limine but in an admonishment in the courtroom to comply with the motion in limine, and after the third time I know there's no way that the jury can set aside what she's testified to, plus the officer who was in charge of the investigation and the comment made by the prosecutor in his case, and therefore denying this defendant a fair and impartial trial by a fair and impartial jury.

Court: I'll deny the motion for mistrial.

Defense Attorney: Note our exception.

Court: It will be noted on the record. I'm again instructing the jury not to take any of the last statement into consideration in any of your deliberations. You may proceed.

While the State's question is not relevant to the appellant's guilt or innocence, it

merely called for a "yes" or "no" answer. That the witness added more information

than was asked for does not mean that the State intentionally elicited the response.

Moreover, the defense attorney's comments while moving for a mistrial actually

**9**

impossible for them to erase that from their minds when they determine the guilt or innocence of this defendant and therefore violating his right to a fair and impartial trial by a fair and impartial jury.

Court:             I'll deny that motion.

Again, the State's question does not appear to purposely elicit Verrett's response. And again, the defense attorney's comments during this exchange compound the impact of Verrett's response by telling the jury what information about the defendant is not being allowed into evidence.

Appellant next cites as objectionable the testimony of Detective Rico Garcia of the Houston Police Department. Shortly after Detective Garcia began his testimony, appellant objected that any further testimony by the officer was irrelevant. This objection was overruled, and the trial court granted appellant's request for a running objection on the same basis. Appellant maintains that he objected to specific parts of Garcia's testimony and moved for a mistrial. Appellant argues that this motion was denied. Appellant does not cite pages from the record where we can locate such exchanges between the trial court and defense counsel. Nevertheless, after reviewing the record we find one instance where the trial court sustained appellant's objection; all other objections were overruled. The record reflects that appellant did not move for a mistrial at any point during the officer's testimony. Appellant's objection to the following testimony was sustained:

Prosecutor:        Now, when Sergeant Muñiz contacted you, what was the purpose in contacting you?

Garcia:            Sergeant Muñiz advised that he had an execution style murder, described it to me. At that time he

**11**

| Court: | All right. Let's proceed. |
|---|---|
| Prosecutor: | Excuse me, Your Honor, but could you explain to me the ruling? |
| Defense Attorney: | Well, Your Honor, I don't believe this court needs to explain anything. |
| Court: | I just sustained his objection on the last answer to your question. |

We conclude that the State's question was not intended to elicit information about Huntsville. Moreover, appellant's timely objection prevented harm because Detective Garcia was not able to testify to the names he received or to the fact that Huntsville records showed that appellant was identified by these names. Furthermore, early in Detective Garcia's testimony, he stated that he received an updated list of Texas Syndicate members from Huntsville on a regular basis. Appellant did not object to the mention of Huntsville and request a jury instruction to disregard. Thus, the source of Detective Garcia's information was already before the jury.

In his brief, appellant also claims that the trial court admonished the State four times during the trial. However, the record does not support this contention. The trial court, on its own motion, admonished the State only once during a short break in the middle of Detective Muñiz's testimony.

| Court: | All right. I'll instruct the State to please talk to all your witnesses, not to mention anything about parole, parole papers, officers, or anything dealing with the penitentiary. Instruct them before they testify so we won't have this problem. |
|---|---|
| Prosecutor: | Okay. |

**13**

Verrett, whose testimony was for the most part corroborated, testified about Zapata's murder as well as the events immediately prior to and after the shooting. Testimony about the appellant's parole, probation, or criminal history were not mentioned during the State's closing argument. Finally, the record reflects that most of defense counsel's comments following the objections were in front of the jury. Some of these comments elaborated on what evidence was to be excluded from the testimony based on the motion in limine and were more informative than testimony provided by the witnesses. For the above reasons, we conclude that rational triers of fact would reach the same conclusion regardless of the challenged testimony. *See Harris*, 790 S.W.2d at 588.

Accordingly, we find beyond a reasonable doubt that any error in the above testimony was harmless and did not prejudice the jury's deliberations. *See* TEX. R. APP. P. 81(b)(2). We overrule appellant's first point of error.

By his second point of error, appellant contends that the trial court erred by denying a motion for new trial based on newly discovered evidence.

An appellant need not allege a *prima facie* case in order to be entitled to a new trial. *State v. Gonzalez*, 855 S.W.2d 692, 694-95 (Tex. Crim. App. 1993). Motions based on newly discovered evidence, however, are disfavored by the courts and viewed with great caution. *Drew v. State*, 743 S.W.2d 207, 225-26 (Tex. Crim. App. 1987); *Ramirez v. State*, 830 S.W.2d 827, 828 (Tex. App.--Corpus Christi 1992, no pet.). In order to obtain a new trial based on newly discovered evidence, a movant must show 1) that the evidence was unknown to him at the time of his trial,

**15**

Appellant subsequently filed his motion for new trial. On November 3, 1994, the trial court heard and denied appellant's motion for new trial.

Relying on *Villarreal v. State*, 788 S.W.2d 672 (Tex. App.--Corpus Christi 1990, pet. ref'd), appellant complains that the trial court's decision should have been based on the evidence heard at the May 2, 1994 hearing because the State did not controvert Garcia's testimony. In *Villarreal*, the State's key witness signed an affidavit which said that she had falsely testified at the trial, and the State did not controvert the affidavit *at the hearing on the motion for new trial*. 788 S.W.2d at 673.

We ordered the trial court to conduct the May 2, 1994 evidentiary hearing only to determine whether appellant should be allowed to file his out-of-time motion for new trial. At the time of that hearing, the trial court could not consider appellant's motion for new trial because no motion for new trial was pending before the court. It was not until after we reviewed the statement of facts from the May 2, 1994 hearing and the trial court's findings of fact and conclusions of law that we decided to allow appellant to file his motion for new trial.

Moreover, the State's eyewitness, Adrian Verrett, did not recant the testimony that he gave at appellant's trial. And even if Verrett did recant his testimony in Garcia's presence, he abandoned that recantation. Where a witness who recanted abandons the recantation, a new trial is not required. *Id.* at 674.

Before the hearing on appellant's motion for new trial, Adrian Verrett made an affidavit denying Garcia's allegations. At the hearing on the motion for new trial,

**17**

CAUSE No. 92-CR-1384-A

IN THE

TEXAS COURT OF CRIMINAL APPEALS

AUSTIN, TEXAS

§

§   From:  THE 107TH JUDICIAL DISTRICT

EX PARTE,   §

STEVEN GREGORY SANCHEZ,       COURT OF CAMERON COUNTY,

Applicant   §

TEXAS

APPLICANT'S OBJECTION TO ORDER ON APPLICANT'S SECOND
APPLICANT FOR WRIT OF HABEAS CORPUS:

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:

COMES NOW **Steven Gregory Sanchez**, the Applicant,
hereinafter, in the above-styled and numbered Cause, and
files this his 'Objection To Order On Applicant's Second
Application For Writ of Habeas Corpus,' and in support
thereof, will respectfully show this Honorable Court as
follows:

I.

Applicant is unlawfully confined pursuant to the
judgment and sentence of the 107 Judicial Court of Cameron
County, Texas, in Cause No. 92-CR-1384-A (the primary case),
where Applicant was convicted pursuant to a plea of not
guilty for the felony offense of murder. The jury assessed
punishment, enhanced by several void prior convictions, at
ninety-nine (99) years confinement in the Texas Department of
Criminal Justice, Institutional Division.

The Thirteenth Court of Appeals affirmed the primary case in an unpublished opinion delivered on January 18, 1996. **Sanchez v. State**, No. 13-93-350-CR.

## II.

Applicant respectfully objects to the Trial Court's Order On Applicant's Second Application For Writ Of Habeas Corpus and offers the following additional reply:

1.   **Tex. Code Crim. Proc. Art. 11.04** provides that "Every provision relating to the writ of habeas corpus shall be most favorably construed in order to give effect to the remedy, and protect the rights of the person seeking relief under it." However, an application for writ of habeas corpus is not to be used as a substitute for appeal. **Ex parte Hopkins**, 610 S.W. 2d 479, 480 (Tex. Crim. App. 1980, en banc). Its purpose is "only to review jurisdictional defects or denials of fundamental or constitutional rights." **Ex parte Tovar**, 901 S.W. 2d 484, 485 (Tex. Crim. App. 1995, en banc); **Ex parte Goodman**, 816 S.W. 2d 383, 385 (Tex. Crim. App. 1991, en banc).

a.   **Purpose and scope of habeas corpus review.** Considering the most important of all writs, the habeas corpus ad subjiciendum, the Great Writ, is established upon the goal of protecting individual liberty interests from governmental oppression. **Fay v. Noia**, 372 U.S. 391, 400-01 (1963), overruled by **Stone v. Powell**, 428 U.S. 465 (1976). Its root principle is that no person should suffer illegal imprisonment. **Deters v. Collins**, 985 F. 2d 789 (5th Cir.

-2-

CIMPDF - www.fineku.com

Habeas corpus is available to a prisoner who is held
in custody in violation of the Constitution, laws or treaties
of the United States. 28 U.S.C. Sec. 2241(c)(3) (1988).
"[H]abeas lies to inquire into every constitutional defect in
any criminal trial, where the petitioner remains 'in custody'
because of the judgment in that trial, unless the error
committed was knowingly and deliberately waived or
constitutes mere harmless error." Mackey v. United States,
401 U.S. 667, 685-66 (1971).

In the instant case, the trial court stated that
Applicant's ground 10, at P. ii, which is Applicant's
argument of no evidence to support his conviction for the
alleged murder where the facts revealed that another
individual by the name of Adrain Tony Verrett had bragged to
investigator Arnoldo Garcia and Jose Gaona, about how he
killed Pedro Zapata, Jr., and worked out a deal with the
State to place the blame on the Applicant. However, the
assistant district attorney, John A. Onlson, was aware of
this fact that Adrain Tony Verrett had bragged about killing
Pedro Zapata, Jr., over a dope deal, but moved to shield the
fact from the court. This clearly shows the prosecution
acting in bad faith in withholding material and beneficial
evidence that was favorable to the Applicant's defense. It
should further be noted that other that Verrett's testimony
there is nothing to place Applicant at the scene of the
crime. The reiterate, the State has not proven that Applicant

held the gun that fired the bullets that killed Pedro Zapata, Jr. Arguably, if Verrett's testimony is to be considered competent, the most he shown is that Applicant was at the scene of the crime. There is no other evidence to either place Applicant at the scene of the crime or establish that Applicant killed Zapata, Jr. The State did not prove a conspiracy to kill Zapata, Jr. What the State proved that during the course of a drug deal which soured, a murder was committed, and Adrain Tony Verrett bragged that he committed that murder.

Therefore, this error is cognizable in post-conviction for writ of habeas corpus. **Ex parte Moffett**, 342 S.W. 2d   184 (Tex. Crim. App. 1976).

Obviously, John A. Olson somehow knew that the evidence he had shield would show that Applicant did not commit the murder, but no attempt was made by Olson to explain the evidence of Verrett's statement or argue that it somehow did not refute Verret's testimony at trial. The State did not prove its case against the Applicant beyond a reasonable of doubt.

Cameron County Assistant District Attorney, John A. Olson, was responsible for preparing the State's pleadings and jury instructions concerning this instant case. The indictment charged Applicant as a party, i.e., he conspired with Santo Adames and Miguel Hernandez Garcia to commit the murder of Pedro Zapata, Jr. However, the court's charge prepared by John A. Olson, instructed the jury the find Applicant guilty as acting alone in committing the alleged

-4-

CSEPDF - www.tsxss.com

murder.

Therefore, the Applicant objects to the trial court's order as it relates to Applicant's no evidence claim in this instant case. The facts clearly shows that Applicant's conviction was obtained in violation of the United States Constitution.

2    Next, the trial court stated that Applicant's "Grounds 1-12 cannot be sustained." The trial court in its "Order" has misinterpreted 'Applicant's First Application For Writ of Habeas Corpus,' for an out-of-time appeal as being an application on attacking his conviction and the duration of confinement. See Ex parte Torres, 943 S.W. 2d 469 (Tex. Crim. App. 1997). On page 2 of its Order, the trial court stated that, "A review of Applicant's direct appeal and pro se petitions supports a finding of procedural bar, and Applicant did not explain why these Grounds were not previously-raised therein, implying Article 11.07 Sec. 4(a) V.A.C.C.P., that Applicant's had abused the writ process. The trial court's order on Applicant's second application for writ of habeas corpus shows that it was also prepared by the Cameron County Assistant District Attorney, John A. Olson, which reflects that he has trouble understanding the criminal law and the appellate procedures as it relates to the application for the writ of habeas corpus.

The facts in this instant case show that Applicant's appellate counsel did not file a petition for discretionary

-5-

review on behalf of the Applicant and did not advise him of his right to file pro-se.

However, even if Applicant had raised the errors in his first application for writ of habeas corpus for an out-of-time appeal, those errors would have been dismissed or denied as being premature. Applicant's first application for writ of habeas corpus operated to restore the pendency of his direct appeal where he had loss his chance to petition the Texas Court of Criminal Appeals on a pro-se petition for discretionary review. See **Ex parte Torres**, 943 S.W. 2d 469 (Tex. Crim. App. 1997), reversed at 951 S.W. 2d 6 (1997).

In **Ex parte Torres**, **supra**, the Court of Criminal Appeals held, "Because granting out-of-time appeal restores the pendency of direct appeal, any substantive claims in habeas corpus petition challenging conviction would become premature, and hence, subject to dismissal. **Vernon's Ann. Texas C.C.P. art. 11.07, Sec. 4(a) V.A.C.C.P.**, from having this Court consider the merits of the instant applications. The trial court also concluded that Applicant's claims were barred because they had been raised and rejected on direct appeal. We filed and set these applications for submission to determine if **Sec. 4(a)** bars this Court from considering the merits of those subsequent applications and to determine whether applicant's claims are barred because they were raised and rejected on direct appeal.

We hold that there is no bar to addressing the merits

-6-

of applicant's claims, and we remand those claims for further proceeding."

The Court of Criminal Appeals also stated in **Ex parte Torres, supra,** that "For a claim to be barred under **Sec. 4(a),** it must be filed after the "final disposition" of an initial application."

In the instant case, as mentioned earlier, the assistant district attorney, John A. Olson, prepared the proposed "Order On Applicant's Second Application For Writ Of Habeas Corpus," and apparently assumed that a final disposition occurred when the Court of Criminal Appeals granted Applicant's first application for writ of habeas corpus for an out-of-time appeal.

However, the Texas Court of Criminal Appeals held that a "final disposition," as contemplated by **Sec. 4(a),** does not occur when an application for a writ of habeas corpus is granted for an out-of-time appeal. **Ex parte Torres, supra.**

In **Charles v. State,** 809 S.W. 2d 574 (Tex. App. - San Antonio 1991), the Court held that, "Acting in the interest of judicial economy is worthwhile. However, the exclusive post-conviction remedy in final felony convictions in Texas courts is through a writ of habeas corpus pursuant to **Tex. Code Crim. Proc. art. 11.07. Ater v. Eighth Court of Appeals,** 802 S.W. 2d 241 (Tex. Crim. App. 1991).

Under the circumstances of this case, the appropriate procedure would be a post-conviction writ of habeas corpus seeking an out-of-time appeal."

-7-

In the instant case, Applicant contends that because the Court of Criminal Appeals granted his first application for writ of habeas corpus for an out-of-time appeal that restored the pendency of his direct appeal, Applicant's second application for writ of habeas corpus (which is his first application for writ of habeas corpus challenging his conviction), is not barred from consideration on its merits. Ex parte Brown, 602 S.W. 2d 3, 4 (Tex. Crim. App. 1988).

Therefore, Applicant's Grounds 1-12 are not barred. Ex parte Torres, 943 S.W. 2d 469 (Tex. Crim. App. 1997).

2.    The trial court in its Order at page 5, stated that, "The Court again notices that Applicant failed to raise the ineffective assistance issue in his pro se petition to now proffers. Sanchez v. State, No. 1359-99. Since he failed to do so, Applicant waived any right to bring them in a habeas proceeding."

Again, the Cameron County Assistant District Attorney, John A. Olson, in preparing the proposed court "Order On Applicant's Second Application For Writ Of Habeas Corpus," has misinterpreted the laws as it is related to the writ of habeas corpus and the appellate procedure. Applicant avers that any competent attorney or assistant district attorney should be aware of the fact that a pro se litigant cannot raise any new contention in a pro se petition for discretionary that were not present in his appellate's brief to the immediate Court of Appeals. As discussed in Ex parte

-3-

**Torres, supra,** nor is it appropriate to the raise additional claims when filing a writ of habeas corpus for an out-of-time appeal.

In **Ex parte Torres, supra,** the Court of Criminal Appeals further held that, "Before addressing the meaning of the phase "final disposition," contained in Sec. 4(a), we must accurately characterize the nature of the disposition in the present case. In determining the nature of a disposition, we look beyond mere labels to the substance of the action taken. **State v. Young,** 810 S.W. 2d 221, 222-223 (Tex. Crim. App. 1991) (appealability of a trial court order); **State v. Moyera,** 807 S.W. 2d 227, 322-323 (Tex. Crim App. 1931) (same). See Ex parte Tarver, 725 S.W. 2d 195, 198-199 (Tex. Crim. App. 1926) (whether probation revocation is administrative or judicial); **Ex parte Cray,** 649 S.W. 2d 640, 642 (Tex. Crim. App. 1983) (whether relief sought is mandamus or prohibition). Although we stated that other claims were "denied" without prejudice, the true effect of our disposition was to dismiss those claims. In our writ jurisprudence, a "denial" signifies that we addressed and rejected the merits of a particular claim while a "dismissal" that we dismissed those claims without prejudice."

Therefore, Applicant's claim of ineffective assistance of counsel is not barred for a failure to raise it in his pro se petition for discretionary review or in his writ of habeas corpus for an out-of-time appeal.

-9-

The facts in this instant case reveals that the Cameron Assistant District Attorneys, Ms. Lopez, Ms. Treveno, Mr. Olson and the Presiding Judge, Hon. Benjamin Euresti, Jr., acted in a calculated ploy to deprive the Applicant of a fair and impartial by a fair and impartial jury. The use of such tactics by the State in this case, is patently unfair and violative of Applicant's due process rights under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

WHEREFORE, PREMISES CONSIDERED, Applicant respectfully prays that this Honorable Court of Criminal Appeals grant this objection in all things, and thereafter, issue an Order directing the trial court to conduct an evidentiary hearing, make findings of facts and conclusion of law on Applicant's Application for Writ of Habeas Corpus Pursuant to Art. 11.07 V.A.C.C.P.

Respectfully submitted,

/s/ Steven G. Sanchez

MR. STEVEN G. SANCHEZ
TDCJ-ID No. 650839
Estelle Unit
264 FM 3478
Huntsville, Texas 77320-3322

sgs/filed

-10-

## III.

### CERTIFICATE OF SERVICE

That, I Steven G. Sanchez, do hereby certify that a true and correct copy of the 'Applicant's Objection To Order On Applicant's Second Application For Writ Of Habeas Corpus, has been served by placing the same in the U.S. Mail, Postage Prepaid, on this the 20ᵗᴴ day of March, 2000, addressed to: Yolanda de Leon, County (Criminal District) Attorney, 974 E. Harrison, Brownsville, Texas 78520.

/s/ Steven G. Sanchez

**Mr. Steven G. Sanchez**

## IV.

### VERIFICATION

That I, STEVEN G. SANCHEZ, the Applicant, in the above and foregoing Applicant's Objection To Order On Applicant's Second Application For Writ Of Habeas Corpus, upon my oath, states that I have read said Objection, and do hereby declare under penalty of perjury that the factual allegations of the same are true and correct as to his belief and to the best of his knowledge.

EXECUTED on this 20ᵗᴴ day of March, 2000.

/s/ Steven G. Sanchez

**MR. STEVEN G. SANCHEZ**
**#640639 Estelle Unit**
**264 FM 3478**
**Huntsville, Tex. 77320**
**3322**

-11-